

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-07-069-CR

JERRY BRIDGES                                                      APPELLANT

V.

THE STATE OF TEXAS                                                      STATE

------------

FROM THE 16TH DISTRICT COURT OF DENTON COUNTY

------------

## MEMORANDUM OPINION[1]

------------

Appellant Jerry Bridges appeals his conviction for possession of a controlled substance with intent to deliver.[2] We affirm.

While in custody the day after his arrest, appellant signed a written statement admitting that he had bought, used, and sold methamphetamine.

---

[1] *See* TEX. R. APP. P. 47.4.

[2] *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112 (Vernon 2003).

Following a pretrial hearing, the trial court ruled the statement admissible, and it was admitted at trial as State's Exhibit 1. The jury found appellant guilty as charged in the indictment and, after hearing additional evidence and argument, assessed punishment at sixty years' confinement.

In point one, appellant claims that the trial court abused its discretion in admitting State's Exhibit 1 because it lacked a warning required by code of criminal procedure article 38.22 section 2(a)(4) that, if indigent, the accused has the right to an appointed lawyer to advise him before and during any questioning.[3] The State concedes in its brief that State's Exhibit 1 lacks the required warning, but the State argues that appellant has forfeited his claim because he did not raise the issue with the trial court. We agree.

To preserve a complaint for review, a party must have presented to the trial court a timely request, objection, or motion stating the specific grounds for the desired ruling if those grounds are not apparent from the context of the request, objection, or motion.[4] An objection preserves only the specific ground cited.[5]

---

[3] TEX. CODE CRIM. PROC. art. 38.22, § 2(a)(4) (Vernon 2005).

[4] TEX. R. APP. P. 33.1(a)(1)(A); *Mosley v. State,* 983 S.W.2d 249, 265 (Tex. Crim. App. 1998) (op. on reh'g), *cert. denied*, 526 U.S. 1070 (1999).

[5] *See* TEX. R. APP. P. 33.1(a)(1)(A); *Mosley,* 983 S.W.2d at 265*; Bell v. State,* 938 S.W.2d 35, 54 (Tex. Crim. App. 1996), *cert. denied,* 522 U.S.

2

At trial, appellant argued,

Also, I would point to the Court the case 729 S.W.2d 137(A). I believe it is the State versus Taylor. I just had it up here, but I'm not locating it, a case that is shockingly similar to this one in which the defendant was brought in and even made the statement that he didn't read and write so well, such as what was previously proffered here. And the statement was read to him just as it is alleged to here, but without any other safeguards, just as it was here. In that case the Court ordered the statement to be suppressed. The Court of Appeals ordered that it be suppressed upon appeal. That's a case out of Beaumont, as I recall.

. . . .

. . . and also I would – again, I was trying to pull up that case. I believe it was the Taylor versus State, 729 S.W.2d. It's almost factually identical to the present case. And there they ordered the statement suppressed just for the reasons because the officers testified just almost as the officer did here just a few moments ago that, Well he said he couldn't read or write, so he – I read along with him and I had him read through it, and he kind of indicated he under – he understood it.

We can find no argument to the trial court that suppression was required because State's Exhibit 1 lacked the section 2(a)(4) warning relating to appointed counsel. Nor is it apparent from the context of counsel's comments that appellant opposed admission based upon section 2(a)(4).[6] Trial counsel

827 (1997).

[6] In his brief, appellant cites *Thibedeaux v. State*, 729 S.W.2d 137 (Tex. App.—Beaumont 1987, pet. ref'd), as the case to which trial counsel meant to refer in his comments to the trial court. But *Thibedeaux* deals with section 2(b), not section 2(a)(4). *See id*. at 137 ("[The] complaint before us is

3

argued that there should have been safeguards in place to ensure the voluntariness of a statement made by one who could not read or write, not that section 2(a)(4)'s warning pertaining to the appointment of counsel for indigent persons did not appear on the face of the statement. Because appellant's point one does not comport with any objection raised at trial, we overrule it.

We overrule point two for the same reason. In point two, appellant claims that the admission of State's Exhibit 1 violated the Fifth Amendment of the United States Constitution and *Miranda v. Arizona*,[7] but he did not raise this objection in the trial court. Therefore, the complaint is not preserved for review.

In points three and five, appellant argues that State's Exhibit 1 was involuntary because appellant is mildly mentally retarded and did not knowingly, intelligently, and voluntarily waive his article 38.22 and *Miranda* rights.

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review.[8] In reviewing the trial court's decision, we do

---

that the confession did not comply with TEX. CODE CRIM. PROC. ANN. art. 38.22(2)(b) (Vernon 1979).").

[7] 384 U.S. 436, 86 S. Ct. 1602 (1966).

[8] *Carmouche v. State,* 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); *Guzman v. State,* 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).

4

not engage in our own factual review.[9] The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony.[10] Therefore, we give almost total deference to the trial judge's rulings on (1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor, and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor.[11] But when the trial court's rulings do not turn on the credibility and demeanor of the witnesses, we review de novo a trial court's rulings on mixed questions of law and fact.[12] When the trial court makes explicit fact findings, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those fact findings.[13] We then review the trial court's legal ruling de novo unless its explicit fact findings also

---

[9] *Romero v. State,* 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Best v. State,* 118 S.W.3d 857, 861 (Tex. App—Fort Worth 2003. no pet.).

[10] *State v. Ross,* 32 S.W.3d 853, 855 (Tex. Crim. App. 2000); *State v. Ballard,* 987 S.W.2d 889, 891 (Tex. Crim. App. 1999).

[11] *Montanez v. State,* 195 S.W.3d 101, 108–09 (Tex. Crim. App. 2006); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002); *State v. Ballman,* 157 S.W.3d 65, 68 (Tex. App.—Fort Worth 2004, pet. ref'd).

[12] *Estrada v. State,* 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson,* 68 S.W.3d at 652–53.

[13] *State v. Kelly,* 204 S.W.3d 808, 818–19 (Tex. Crim. App. 2006).

dispose of the legal ruling.[14] We must uphold the trial court's ruling if it is supported by the record and correct under any theory of law applicable to the case even if the trial court gave the wrong reason for its ruling.[15]

When the suppression issue was litigated at a pretrial hearing and again during trial, we consider evidence from both parts of the record in determining whether the record, viewed in the light most favorable to the trial court's findings, supports those findings.[16]

Whether a written statement is voluntary is determined by examining the totality of the circumstances surrounding its acquisition.[17] An accused's mental

---

[14] *Id.* at 819.

[15] *State v. Stevens,* 235 S.W.3d 736, 740 (Tex. Crim. App. 2007); *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003), *cert. denied,* 541 U.S. 974 (2004).

[16] *See Rachal v. State,* 917 S.W.2d 799, 809 (Tex. Crim. App.), *cert. denied*, 519 U.S. 1043 (1996).

[17] *Armstrong v. State,* 718 S.W.2d 686, 693 (Tex. Crim. App. 1985) (overruled on other grounds by *Mosely v. State*, 983 S.W.2d 249, 264 n.18 (Tex. Crim. App. 1998).

retardation can figure into the voluntariness inquiry.[18] Illiteracy, too, is relevant, but does not demand a finding of involuntariness.[19]

The record shows the following:

- Appellant was sixty-one years old and for a number of years had owned and operated a business.

- After appellant was arrested in a buy-bust operation, officers found $1,020.00 in cash and a small plastic bag of methamphetamine in his pockets.

- The night of his arrest, appellant telephoned Lieutenant David Scott several times from jail.

- The next day, Officer Jeff Davis went to the jail to talk to appellant and see what he wanted.

- When Officer Davis arrived, appellant appeared depressed, expressed remorse, and asked whether Lieutenant Scott was upset with him and what was going to happen.

---

[18] *Delao v. State,* 235 S.W.3d 235, 241 (Tex. Crim. App. 2007) *cert. denied*, 128 S. Ct. 1128 (2008); *Penry v. State*, 903 S.W.2d 715, 744 (Tex. Crim. App.), *cert. denied*, 516 U.S. 977 (1995); *Sosa v. State,* 769 S.W.2d 909, 915 (Tex. Crim. App. 1989) *cert. denied*, 529 U.S. 1056 (2000); *see Arizona v. Fulminante*, 499 U.S. 279, 286 n.2, 111 S. Ct. 1246, 1252 n.2 (1991).

[19] *Westley v. State,* 754 S.W.2d 224, 229 (Tex. Crim. App. 1988).

- Officer Davis told appellant that he would like to take his statement to get his version of what had transpired the previous day, and appellant agreed.

- At the booking-desk computer, Officer Davis pulled up a form, and appellant was able to read along as Officer Davis read him his *Miranda* rights less the right to appointed counsel.

-  Appellant acknowledged that he understood his rights, agreed to waive them, signed a waiver to that effect, and gave a statement that Officer Davis typed and appellant signed.

- Appellant told Officer Davis that he had attended school through seventh grade and could read "pretty good" but not spell.

- Officer Davis made no promises or threats to appellant, and in giving the statement, appellant appeared to know what he was doing.

- After the statement was prepared, appellant read it back to Officer Davis.

- Dr. Leon Peek, a psychologist, performed several tests on appellant, and testified both at the pretrial hearing and before the jury at trial.

- Dr. Peek concluded that appellant had an IQ of 58, was mildly mentally retarded, and could not "read for information," which meant that appellant could understand words as he heard them but would have difficulty understanding their meaning and importance.

8

- One of the tests showed that appellant was malingering and not making his best effort in taking the tests, and Dr. Peek believed that the other scores, including appellant's IQ, were underestimates.

- The trial court, based upon its observation of appellant's behavior and demeanor, found that appellant displayed no indications of mental incapacity such as that his statement would not have been voluntarily made.

Having reviewed the trial court's findings in the appropriate light, the evidence presented at the suppression hearing, and the evidence presented at trial, we hold that the trial court did not abuse its discretion in finding that, under the totality of the circumstances, appellant's statement admitted as State's Exhibit 1 was voluntary. We overrule appellant's points three and five.

In point four, appellant contends that the trial court abused its discretion in admitting State's Exhibit 1 because it "contained references to inadmissible extraneous offenses and its probative value was outweighed by its prejudicial effect."

State's Exhibit 1 contained a list of persons to whom appellant admitted he has sold methamphetamine. It also contained appellant's admissions that he has bought approximately a half-ounce of methamphetamine every week for

9

the last three years, that he uses about a quarter-ounce every week, that he

sells the rest, and that he sells enough methamphetamine to support his habit.

Admissibility of evidence is a matter within the trial court's discretion.[20]

As long as the trial court's ruling admitting evidence was within the "zone of

reasonable disagreement," there is no abuse of discretion and its ruling will be

upheld.[21]

Evidence of "other crimes, wrongs or acts" is inadmissible in a criminal

case to prove that the defendant acted in conformity with his character to

commit crimes.[22]  Evidence of other bad acts may be admissible, however, if

it has relevance apart from its tendency to prove that the defendant acted in

conformity with his character.[23]  Evidence that logically serves to establish

some elemental fact, such as identity or intent; or that tends to establish some

evidentiary fact, such as motive, opportunity or preparation, leading inferentially

to an elemental fact; or evidence that rebuts a defensive theory may be

---

[20] *Montgomery v. State,* 810 S.W.2d 372, 378–79 (Tex. Crim. App. 1990).

[21] *Rachal,* 917 S.W.2d at 807.

[22] TEX. R. EVID. 404(b).

[23] *Montgomery,* 810 S.W.2d at 388 (op. on reh'g).

10

admissible.[24]  "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."[25]

Appellant was tried for possession of a controlled substance, namely, methamphetamine, with intent to deliver.  Intent to deliver, therefore, is an essential element of that offense.  Those portions of State's Exhibit 1 that relate to appellant's selling methamphetamine are relevant to proving this essential element.

Having held the evidence to be relevant, we must determine whether its probative value was substantially outweighed by the danger of unfair prejudice.[26]  To make this determination, we must consider the inherent probative force of the proffered item of evidence along with the proponent's need for that evidence, and balance these considerations against the following four factors that favor exclusion:

---

[24] *See Marc v. State,* 166 S.W.3d 767, 775 (Tex. App.—Fort Worth 2005, pet. ref'd); *Massey v. State,* 933 S.W.2d 582, 586 (Tex. App.—Houston [1st Dist.] 1996, no pet.).

[25] TEX. R. EVID. 401; *Marc,* 166 S.W.3d at 775.

[26] *Montgomery,* 810 S.W.2d at 388–89 (op. on reh'g).

11

(1) any tendency of the evidence to suggest [a] decision on an improper basis,

(2) any tendency of the evidence to confuse or distract the jury from the main issues,

(3) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and

(4) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted.[27]

In this case, the probative force and the State's need to admit State's Exhibit 1 outweigh the factors that favor exclusion. Appellant's admission that he regularly sold methamphetamine was compelling evidence that appellant intended to sell methamphetamine. It would be rational for the jury to conclude from appellant's admission that he regularly sold methamphetamine that he intended to sell it in this case. His admission further served to rebut appellant's theories that the drugs were planted on him and that the money he carried when he was arrested had come, not from selling drugs, but from payments

---

[27] *Gigliobianco v. State,* 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006).

from his rental properties. While it was likely to be given some weight by the jury due to its probative value, the admission had no tendency to suggest a decision on an improper basis or to confuse or distract the jury from the main issues. In addition, the State did not take an inordinate amount of time to develop the evidence compared to the rest of the record, nor is there any indication in the record that the evidence distracted the jury from consideration of the indicted offense.

Because the factors favoring exclusion do not substantially outweigh the probative force of the evidence and the State's need for it, we hold that the trial court did not abuse its discretion in admitting evidence of appellant's statement under rule 403. We overrule point four.

In point six, appellant argues that the trial court abused its discretion in failing to fully instruct the jury not to consider State's Exhibit 1 unless it found that all the proper warnings had been given and that appellant knowingly, intelligently, and voluntarily waived his rights before making the statement.

When the evidence raises a fact issue as to whether a defendant had been warned of his rights and voluntarily waived them prior to making a statement, he is entitled to an instruction on the voluntariness of his

confession.[28] In such cases, it is proper to include in the charge an instruction informing the jury that if it has a reasonable doubt as to whether a defendant knowingly, intelligently, and voluntarily waived his rights before giving a confession, it must disregard the confession and not consider it for any purpose.[29]

Appellant concedes that he neither requested a voluntariness instruction nor objected to the voluntariness instruction the trial court included in the charge. A challenge to the voluntariness of a statement is a defensive issue.[30] To preserve a complaint regarding the omission of a jury instruction on a defensive issue for our review, the appellant must make a proper objection or request in the trial court.[31] The appellant in this case did neither. Therefore, his complaint regarding the omission of the instruction is waived. We overrule point six.

---

[28]▲ *Dinkins v. State*, 894 S.W.2d 330, 353 (Tex. Crim. App.), *cert. denied*, 516 U.S. 832 (1995).

[29]▲ *Bell v. State,* 582 S.W.2d 800, 808–09 (Tex. Crim. App. 1979), *cert. denied*, 453 U.S. 913 (1981).

[30]▲ *Mendoza v. State,* 88 S.W.3d 236, 239 (Tex. Crim. App. 2002); *Muniz v. State,* 851 S.W.2d 238, 254 (Tex. Crim. App.), *cert. denied*, 510 U.S. 837 (1993).

[31]▲ TEX. R. APP. P. 33.1; *Posey v. State,* 966 S.W.2d 57, 61–62 (Tex. Crim. App. 1998)(trial courts have no duty to *sua sponte* instruct the jury on unrequested defensive issues).

In point seven, appellant contends that his trial counsel was ineffective in failing to object to the admission of State's Exhibit 1 because it did not contain proper 38.22 and *Miranda* warnings on its face and because counsel failed to object to the trial court's inadequate instruction on voluntariness.

We apply a two-pronged test to ineffective assistance of counsel claims.[32] First, appellant must show that counsel's performance was deficient, which requires showing that counsel made such serious errors that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment.[33] Counsel's performance is deficient only if it fell below an objective standard of reasonableness measured by prevailing professional norms.[34] The record must be sufficiently developed to overcome a strong presumption that counsel provided reasonable assistance.[35] Our scrutiny of counsel's performance must

---

[32] *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005); *Mallett v. State*, 65 S.W.3d 59, 62–63 (Tex. Crim. App. 2001); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999).

[33] *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064.

[34] *Id.* at 688–89, 104 S. Ct. at 2065.

[35] *Bone v. State,* 77 S.W.3d 828, 833 & n.13 (Tex. Crim. App. 2002); *Thompson,* 9 S.W.3d at 813–14.

be highly deferential, making every effort to eliminate the distorting effects of hindsight.[36]

Second, appellant must show that counsel's deficient performance prejudiced the defense; this requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial.[37] Appellant must show that there is a reasonable probability that, but for counsel's deficiency, the result of the trial would have been different.[38]

A claim of ineffective assistance of counsel must be firmly grounded in, and supported by, the record.[39] When the record is silent as to possible trial strategies employed by defense counsel, we will not speculate on the reasons for those strategies.[40]

There is a substantial risk of failure when a claim of ineffective assistance of counsel is brought on direct appeal.[41] "Under normal circumstances, the

---

[36] *Strickland,* 466 U.S. at 689, 104 S. Ct. at 2065.

[37] *Id.* at 687, 104 S. Ct. at 2064.

[38] *Id*. at 694, 104 S. Ct. At 2068.

[39] *Thompson,* 9 S.W.3d at 814; *Jackson v. State,* 973 S.W.2d 954, 955 (Tex. Crim. App. 1998).

[40] *See Jackson v. State,* 877 S.W.2d 768, 771 (Tex. Crim. App. 1994).

[41] *Thompson,* 9 S.W.3d at 813.

record on direct appeal will not be sufficient to show that counsel's representation was so deficient and so lacking in tactical or strategic decisionmaking as to overcome the presumption that counsel's conduct was reasonable and professional."[42]

This case demonstrates the "inadequacies inherent in evaluating ineffective assistance claims on direct appeal."[43] Although appellant filed a motion for new trial, there is nothing in the record to show that he presented it to the trial court to afford the trial court an opportunity to hold a hearing and inquire into the reasons for trial counsel's acts or omissions. Consequently, we cannot determine whether counsel's actions were grounded in sound trial strategy because the record is silent as to possible trial strategies, and we will not speculate on the reasons for those strategies.[44] Nor is this a case where the trial record alone is sufficient to support appellant's claim that counsel was ineffective.[45] Therefore, appellant has failed to meet the first prong of *Strickland.* We overrule point of error seven.

---

[42]▲ *Bone,* 77 S.W.3d at 833.

[43]▲ *Patterson v. State,* 46 S.W.3d 294, 306 (Tex. App.—Fort Worth 2001, no pet.).

[44]▲ *See id.; Jackson,* 877 S.W.2d at 771.

[45]▲ *See Andrews v.* State, 159 S.W.3d 98, 103 (Tex. Crim. App. 2005); *Thompson*, 9 S.W.3d at 813.

Having overruled all of appellant's points of error, we affirm the trial court's judgment.

PER CURIAM

PANEL:  CAYCE, C.J.; DAUPHINOT and MCCOY, JJ.

DO NOT PUBLISH
TEX. R. APP. P. 47.2(b)

DELIVERED:  August 29, 2008