Cletus Schwana PATTERSON,
Appellant,

v.

The STATE of Texas, State.

No. 2–98–602–CR.

Court of Appeals of Texas,
Fort Worth.

Feb. 15, 2001.

J. Don Carter, Earl R. Waddell, III, Fort Worth, for Appellant.

Richard L. Hattox, Dist. Atty., Robert Christian, Asst. Dist. Atty., Granbury, for Appellee.

Before DAY and LIVINGSTON, JJ.; and RICHARDS, J., Sitting by Assignment.

## OPINION

DAVID L. RICHARDS, Justice (Assigned).

### Introduction

Appellant Cletus Schwana Patterson is the mother of two children, Sarah, age 11, and James,[1] age 9. Sometime during the early morning hours of April 30, 1997, appellant's former boyfriend, Bobby Woods, entered appellant's residence through a window and kidnapped both children. Woods drove them a distance, seriously wounded and abandoned James

---

1. "James" is not the child's real first name; instead, it is a fictitious name chosen by us to safeguard his privacy interests.

in a graveyard, and killed Sarah at another location.

Woods was later tried and convicted for his crimes.[2] Appellant was prosecuted for two counts of the felony offense of injury to a child by omission under the theory that she failed to aid her children during the kidnapping and failed to notify law enforcement authorities. The jury found appellant guilty and assessed her punishment at 23 years' confinement on each count to be served concurrently.

Eight points are presented on appeal. We will reverse and vacate appellant's convictions for the first degree offense of injury to a child and render judgment of conviction for two counts of the lesser included offense of reckless injury to a child by omission, resulting in serious bodily injury. Tex. Penal Code Ann. §§ 22.04(a)(1), 22.04(e) (Vernon Supp. 2001).

## The Indictment

Appellant was charged by indictment with two counts of intentionally or knowingly causing serious bodily injury to Sarah and James by failing to provide aid and protection as they were being kidnapped, by failing to summon aid when she knew they had been kidnapped, and for failing to notify and report to law enforcement her knowledge that Woods was the perpetrator of the offenses.

## Complaints on Appeal

In eight points on appeal, appellant argues that the evidence is legally insufficient, that she was denied effective assistance of counsel, and that the trial court's jury instructions were defective in three respects. We begin by addressing appellant's sufficiency complaints.

*Legal Sufficiency*

### A. The Standard of Review

In reviewing the legal sufficiency of the evidence to support a conviction, we view the evidence in the light most favorable to the verdict. *Narvaiz v. State*, 840 S.W.2d 415, 423 (Tex.Crim.App.1992), *cert. denied*, 507 U.S. 975, 113 S.Ct. 1422, 122 L.Ed.2d 791 (1993). The standard for review is the same for direct and circumstantial evidence cases. *Geesa v. State*, 820 S.W.2d 154, 158–62 (Tex.Crim.App.1991), *overruled on other grounds by Paulson v. State*, 28 S.W.3d 570, 573 (Tex.Crim.App. 2000). The critical inquiry is whether, after so viewing the evidence, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *McDuff v. State*, 939 S.W.2d 607, 614 (Tex.Crim.App.), *cert. denied*, 522 U.S. 844, 118 S.Ct. 125, 139 L.Ed.2d 75 (1997). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

The legal sufficiency of the evidence is a question of law. The issue on appeal is not whether we as a court believe the State's evidence or believe that the defense's evidence outweighs the State's evidence. *Matson v. State*, 819 S.W.2d 839, 846 (Tex.Crim.App.1991); *Wicker v. State*, 667 S.W.2d 137, 143 (Tex.Crim. App.), *cert. denied*, 469 U.S. 892, 105 S.Ct. 268, 83 L.Ed.2d 204 (1984). Our duty is not to reweigh the evidence from reading a cold record but to act as a due process safeguard ensuring only the rationality of the fact finder. *Williams v. State*, 937 S.W.2d 479, 483 (Tex.Crim.App.1996).

---

2. *Woods v. State*, 14 S.W.3d 445 (Tex.App.— Fort Worth 2000, no pet.).

The verdict may not be overturned unless it is irrational or unsupported by proof beyond a reasonable doubt. *Matson*, 819 S.W.2d at 846.

■ Where the jury is authorized to convict on any one of several theories or methods of commission of the same offense (e.g., two different statutory definitions of the same offense) and returns a general verdict of guilt, it does not matter that evidence is insufficient to sustain one or more of the theories, so long as evidence is sufficient to sustain conviction under at least one theory. *Kitchens v. State*, 823 S.W.2d 256, 258 (Tex.Crim.App.1991) (plurality op.), *cert. denied*, 504 U.S. 958, 112 S.Ct. 2309, 119 L.Ed.2d 230 (1992).

■ In determining the legal sufficiency of the evidence to show appellant's intent, and faced with a record that supports conflicting inferences, we "must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflict in favor of the prosecution, and must defer to that resolution." *Matson*, 819 S.W.2d at 846.

### B. Application

In points one and two, appellant contends the evidence is legally insufficient to prove she knowingly, by omission, caused serious bodily injury to Sarah or James as required by section 22.04(a)(1) of the Texas Penal Code. Tex. Penal Code Ann. § 22.04(a)(1). Appellant limits her complaint to the proof that she "knowingly" committed the offenses. Specifically, she argues there is no evidence that she was aware with reasonable certainty that serious bodily injury would result to either Sarah or James as a result of her omissions.

The circumstances surrounding the kidnapping were hotly disputed at trial. Appellant testified that on the night of the offense, she took the children shopping and to a restaurant for dinner. After returning home, they talked. Sometime after midnight, the children retired to a bedroom they shared. Appellant slept alone in her bedroom. When she awoke about 6:20 a.m. the following morning, she discovered that the children were missing. After searching her residence, she drove to her mother's nearby house, thinking the children might have arisen earlier and walked there. Appellant's oldest daughter, Rebecca, answered the door. She testified appellant was crying and told her the children were missing. Rebecca rode with appellant back to the house to search for them. Appellant's residence did not have phone service, so after being unable to locate the children, Rebecca returned to appellant's mother's residence and phoned 911.

James' testimony was equivocal on the issue of whether appellant knew of the kidnapping:

[Prosecutor:].... [James], do you think your momma heard Sarah screaming?

A. I don't know if she heard.

[Prosecutor:] Did you ask her about that?

A. No. I asked her if she—in the hospital when I was in there, but she didn't answer me.

[Prosecutor:] Okay. Now, [James], you have told us before that you asked your momma if she heard you. Do you remember that?

A. (Nodding).

[Prosecutor:] What did you tell us she said?

A. I think she said, "I did not hear y'all."

[Prosecutor:] Okay. Did you tell us, [James], that your momma had said that

she didn't come in there because Bobby was too tough?

A. (Nodding).

[Prosecutor:] Did you tell us that?

A. (Nodding).

[Prosecutor:] Is that the truth?

A. (Nodding). I think so, that's the truth.

[Prosecutor:] Okay. Is that what you told us all along?

A. (Nodding).

Appellant's friend and a former boyfriend testified that appellant was a heavy sleeper and, at times, could be so difficult to wake that she had to be physically shaken. Appellant testified she did not hear the children being abducted because she was sleeping with her radio, a fan, and the clothes dryer turned on. The State, however, painted a very different scenario. The State noted that, at times, James related that his mother had heard the abduction but was too frightened to come to their aid. Evidence was produced that given the particular design of appellant's residence and the materials used in its construction, appellant must have heard the assault and must have known that Woods was the perpetrator. The State also produced evidence that, had appellant phoned 911 immediately after the abduction, law enforcement could have sealed off the entire area within seven minutes.

■ Because this is a legal sufficiency challenge, we must view the evidence in the light most favorable to the verdict. Therefore, we overlook all evidence favorable to appellant and, giving the State the benefit of all the reasonable inferences that may be drawn from the inculpatory testimony introduced, determine whether the evidence is sufficient to prove appellant knowingly injured the children by omission. Viewed in this light, the evidence demonstrates that appellant not only

heard the assault on her children, but after making her belated 911 call, failed to advise law enforcement authorities that Woods was the perpetrator.

Section 22.04 of the Texas Penal Code defines the offense of injury to a child. TEX. PENAL CODE ANN. § 22.04(a). It provides in relevant part that a person commits an offense if he intentionally or knowingly, by act or omission, causes bodily injury to a child. *Id.* An omission that causes injury to a child is conduct constituting an offense if the person has care, custody and control of the child or a legal or statutory duty to act. *Id.* § 22.04(b).

■ Injury to a child is a result-oriented or "result of conduct" crime. That is, the culpable mental state relates not to the nature of or circumstances surrounding the charged conduct, but to the *result* of the defendant's conduct. *Haggins v. State,* 785 S.W.2d 827, 828 (Tex. Crim.App.1990); *Alvarado v. State,* 704 S.W.2d 36, 38–39 (Tex.Crim.App.1985); *Beggs v. State,* 597 S.W.2d 375, 377 (Tex. Crim.App. [Panel Op.] 1980). Put another way, the conduct must be done with the required culpability to effect the result. *Alvarado,* 704 S.W.2d at 39. Here, appellant was found guilty of "knowingly" causing serious bodily injury to a child.

■ A person acts "knowingly" with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result. *See* TEX. PENAL CODE ANN. § 6.03(b) (Vernon 1994). Because injury to a child is a "result of conduct" crime, proof that a defendant knowingly "caused" injury to a child requires evidence that the defendant was aware with reasonable certainty that the injury would result from his conduct. *Thornton v. State,* 994 S.W.2d 845, 849 (Tex.App.—Fort Worth 1999, no pet.); *Dusek v. State,* 978 S.W.2d 129, 134 (Tex.

App.—Austin 1998, pet ref'd); *cf. Medina v. State,* 7 S.W.3d 633, 636–37 (Tex.Crim. App.1999) (holding evidence legally sufficient to prove appellant "knowingly" committed murder where facts supported inference that he was aware that his conduct was reasonably certain to result in death); *Martinez v. State,* 763 S.W.2d 413, 419 (Tex.Crim.App.1988) (holding murder is a "result of conduct" offense). The principal question in the instant case is whether the evidence was legally sufficient to prove that appellant was aware with reasonable certainty that serious bodily injury to the children would result from her omissions. The State agrees it was required to prove at least one of its theories of guilt under this standard.

■■■■■ A person is criminally responsible for the result of conduct if the result would not have occurred "but for" the actor's conduct, operating either alone or concurrently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the actor clearly insufficient. TEX. PENAL CODE ANN. § 6.04(a); *Umoja v. State,* 965 S.W.2d 3, 8–9 (Tex.App.—Fort Worth 1997, no pet.). Therefore, within the context of section 22.04, a defendant "knowingly" causes injury to a child when he is aware with reasonable certainty the injury would not result "but for" the defendant's conduct. It logically follows that when the conduct is an omission, proof that a defendant knowingly caused the result requires evidence that the defendant was aware with reasonable certainty the injury would have been prevented had the defendant performed the act that was omitted.[3]

3. The dissent argues proof that appellant's omitted conduct *"might"* have made a difference is sufficient to uphold her conviction for the offense of knowing injury to a child. The dissent also suggests that we have mis-characterized the State's position when we indicate the State agrees on appeal that it was required to prove that appellant knew to a reasonable certainty that her omissions *"would"* cause serious bodily injury to the children. We believe the dissent is mistaken. First, to hold that a defendant may be convicted of a "result of conduct" offense by merely showing that the defendant knew with reasonable certainty that the omitted conduct *"might"* have made a difference would stand the law on its head and make the offense of "knowing injury to a child" a lesser offense of "reckless injury to a child," which requires the State to prove the defendant was aware of but consciously disregarded a substantial and unjustifiable risk that the result will occur. Such analysis is contrary to the very case cited in the dissent, *Dusek v. State,* 978 S.W.2d 129 (Tex.App.—Austin 1998, pet. ref'd). There it was held, "[w]ith respect to 'result of conduct' offenses such as injury to a child, there is little difference between intentional and knowing conduct.... Proof of knowing conduct requires more than a showing that the defendant was aware of but consciously disregarded a substantial and unjustifiable risk

that the result would occur." *Dusek,* 978 S.W.2d at 134. Concerning the dissent's belief that we have mis-characterized the State's position, we note the following passage from the State's brief: "A reasonable jury could have found that when Appellant failed to call law enforcement authorities immediately after she heard Woods assault and kidnap Sarah and [James] Patterson, *Appellant knew to a reasonable certainty that her failure to alert law enforcement would cause serious bodily injury* to both Sarah and [James] Patterson." (Emphasis added). Clearly, while the State was arguing that the evidence was sufficient to prove appellant knew her omission *would* cause serious bodily injury, the State never suggested that it need only prove appellant knew her omission *might* cause serious bodily injury. This position was reiterated during oral argument:

[Question from the Court:] Do you agree with [defense counsel] where he says under your third theory, that the Sheriff's Officer— whoever investigated this case would have had to have been successful in preventing the death?

[Prosecutor:] *Yes, your Honor,* and that goes to the third and fourth points of error, but before I go there I want to talk about one other issue..... *We had to prove in this case that appellant knew to a reasonable certainty*

The trial court's jury instructions permitted convictions under any one of three theories: that appellant knowingly caused serious bodily injury (1) by failing to aid and protect her children as they were being kidnapped, (2) by failing to report to law enforcement authorities and summon aid immediately when she knew the children had been kidnapped, or (3) by failing to report to the authorities that Woods kidnapped the children. Accepting the State's assessment of the evidence as true, there is insufficient evidence showing appellant knew that serious bodily injury to the children would *result from these omissions* because there is no evidence that appellant was aware with reasonable certainty that injury to the children would have been prevented had she acted.

 As to the State's first theory of culpability—that appellant knowingly injured the children by failing to stop Woods after he entered the children's bedroom— there is no evidence that appellant knew with reasonable certainty that intervention during the kidnapping would have prevented the children's injuries. In fact, the very evidence relied on by the State to establish appellant's knowledge of the kidnapping—James' testimony that his mother knew Woods was in their room but that Woods was "too tough" for her, is contrary to this particular theory of culpability. Therefore, even if we assume that when he entered the children's open window Woods was not armed with the knife he later used to kill Sarah, there is simply no evidence that appellant knew to a reasonable certainty that she could stop Woods and thus prevent injury to the children. During oral argument, the State admitted this particular theory of culpability was its

"weakest" and urged the court to consider the remaining theories: appellant's failure to phone 911 immediately following the kidnapping and her failure to inform the authorities of Woods' identity as the perpetrator. The only evidence presented by the State of any action appellant could have taken to prevent serious bodily injury to the children was that she could have immediately called 911 and informed the sheriff's department of Woods' identity. However, there is no evidence from which to infer that appellant was reasonably certain that the police would have responded in time to prevent serious bodily injury to the children. Moreover, there is no evidence that appellant was reasonably certain the sheriff's department would have been able to apprehend Woods and ascertain the children's location and condition in time to prevent injury to the children had she informed them of Woods' identity when they arrived the following morning. Accordingly, we sustain appellant's contention that there was no evidence that appellant knowingly caused serious bodily injury to Sarah and James.

## Reckless Injury

 The State forcefully argues that even if the evidence is legally insufficient to prove that appellant knowingly caused serious bodily injury to the children, it is legally sufficient to support a finding that appellant *recklessly* caused serious bodily injury. We agree. The trial court's charge permitted the jury to convict on the lesser included offense of reckless injury. *See* Tex.Code Crim. Proc. Ann. art. 37.09(3) (Vernon 1981). Because the jury found that appellant knowingly caused serious bodily injury to James and

*that her failure to act would cause this serious bodily injury.*
The State's analysis of the law is, in our view, correct. Suffice to say, we do not agree

with the dissent's assertion that the law required less of the State.

Sarah, it necessarily found there was sufficient proof to support a finding that she recklessly caused serious bodily injury to them. *See* TEX. PENAL CODE ANN. § 6.02(e). If an appellate court finds the evidence is not legally sufficient to sustain a conviction, it may modify the trial court's judgment to reflect a conviction for a lesser included offense if the evidence supports it. *Bigley v. State*, 865 S.W.2d 26, 28 (Tex.Crim.App.1993) (Baird, J., concurs) (citing former TEX.R.APP. P. 80(b), current version at TEX.R.APP. P. 43.2).

A person acts recklessly with respect to the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the result will occur. TEX. PENAL CODE ANN. § 6.03(c). The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint. *Id.*

Woods entered appellant's residence without consent and removed the children through a bedroom window. James related that appellant told him she heard them screaming but was too frightened to come to their aid. It was common knowledge that appellant's residential area was equipped with access to 911 phone emergency service, and appellant eventually directed Rebecca to call 911, but she did not inform the authorities of Woods' identity. When viewed in the light most favorable to the verdict, the evidence is legally sufficient to support a finding that appellant was aware of and disregarded a substantial and unjustifiable risk that Woods would seriously injure the children. We have the authority to modify the judgment in the instant case to reflect a conviction for the lesser offense of reckless injury to a child. We exercise that authority, sus-

tain points one and two, and order the judgment so modified.

In points three and four, appellant contends the evidence is legally insufficient to prove that her failure to act "caused" serious bodily injury as required by penal code section 6.04(a). TEX. PENAL CODE ANN. § 6.04(a). As previously stated, with a result-oriented offense, a person is criminally responsible if the result would not have occurred "but for" the actor's conduct. *Id.; Umoja*, 965 S.W.2d at 8–9.

The State proved by undisputed evidence that, following the kidnapping, Woods took the children directly to a cemetery approximately four miles from the house, and only after his arrival there did he inflict the most serious injuries. When viewing the evidence in the light most favorable to the verdict, we determine that a reasonable juror could have found that the ability of law enforcement authorities to immediately respond and restrict access to the city with minimal resources in approximately seven minutes would have enabled them to intercept Woods before reaching the cemetery road and prevented serious bodily injury to the children. The evidence does not establish as a matter of law that the response of law enforcement officers was clearly insufficient to prevent serious bodily injury. Accordingly, we overrule appellant's contention under her third and fourth points that the evidence was legally insufficient to prove appellant caused serious bodily injury to Sarah and James.

### Factual Sufficiency

As an adjunct to each of appellant's legal sufficiency arguments, appellant asks us, in the alternative, to perform the appropriate review set out in *Clewis*. *Clewis v. State*, 922 S.W.2d 126, 129–30 (Tex.Crim.App.1996). This court has the authority to review fact questions in crimi-

nal cases. We may only consider the factual sufficiency of the evidence if the issue is properly raised. *Id.* at 133. However, factual sufficiency is not properly raised where appellant's brief simply sets out the appropriate standard of review with no analysis. *McDuff v. State,* 939 S.W.2d 607, 613 (Tex.Crim.App.), *cert. denied,* 522 U.S. 844, 118 S.Ct. 125, 139 L.Ed.2d 75 (1997). Appellant's complaints are neither raised as separate points, nor does she set out a separate analysis. That portion of each point in which appellant requests relief under *Clewis* is therefore overruled.

## Ineffective Assistance

In point five, appellant argues her trial attorneys rendered ineffective assistance of counsel. Her appellate brief lists a myriad of complaints: counsel failed to object that the indictment did not charge an offense;[4] counsel failed to object to the charge at punishment, which improperly permitted appellant to be punished for a first degree felony; counsel failed to question the jury during voir dire concerning the State's burden of proof regarding the required culpable mental state, and failed in similar fashion to question the prospective jurors on the issue of causation; counsel failed to address the issues of probation, potential punishment ranges, lesser included offenses, or the need for a unanimous verdict during voir dire; counsel failed to rebut the prosecutor's assertion that the State intended to prove James "woke his mother up" during the attack in his opening statement at guilt/innocence; counsel failed to mention probation during defense's opening statement; counsel failed to properly anticipate evidence and objections; counsel failed to make hearsay objections when appropriate; counsel

failed to cross-examine State's witnesses on crucial testimony and issues; counsel failed to move for a directed verdict; counsel failed to establish appropriate predicates for exculpatory evidence; counsel failed to make proper objections to the jury instructions at guilt/innocence; counsel failed to object to the verdict form and failed to request a list of the standard conditions of probation; counsel failed to effectively argue for probation; counsel failed to timely file a motion for new trial; and counsel's jury argument at guilt/innocence was defective in several respects.

 A claim that counsel's assistance was so defective as to require a reversal has two components. First, appellant must show her counsel's performance was deficient; second, she must show the deficient performance prejudiced the defense. *See Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).

 The first component is met by showing appellant's trial counsel made errors so significant that he was not functioning as the "counsel" guaranteed by the Sixth Amendment to the United States Constitution. *Id.* Appellant must show her attorney's representation fell below an objective standard of reasonableness. *Id.* at 687–88, 104 S.Ct. at 2064. The issue is whether counsel's assistance was reasonable under all the circumstances and prevailing professional norms at the time of the alleged error. *Id.* at 688–89, 104 S.Ct. at 2065. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690, 104 S.Ct. at 2066.

 The second prong of *Strickland* requires a showing that counsel's er-

---

4. The question as to whether the indictment was defective will be addressed in point eight. Our ruling that there was no error in the

indictment is dispositive of this particular complaint.

rors were so serious that they deprived the defendant of a fair trial, i.e., a trial whose result is reliable. *Id.* at 687, 104 S.Ct. at 2064. A defendant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694, 104 S.Ct. at 2068. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* The ultimate focus of our inquiry must be on the fundamental fairness of the proceeding whose result is being challenged. *Id.* at 695, 104 S.Ct. at 2069. However, our scrutiny of counsel's performance must be highly deferential, and every effort must be made to eliminate the distorting effects of hindsight. *Id.* at 689, 104 S.Ct. at 2065.

■ The instant case presents an example of the inadequacies inherent in evaluating ineffective assistance claims on direct appeal. Appellant's motion for new trial did not raise this issue; therefore, the numerous appellate complaints directed at trial counsel involve actions that may or may not be grounded in sound trial strategy. The record does not reflect counsel's reasons for doing or failing to do the things of which appellant complains. In such situations, the issues are better presented within the framework of a post-conviction writ of habeas corpus under article 11.07 of the code of criminal procedure. TEX.CODE CRIM. PROC. ANN. art. 11.07 (Vernon Supp.2001); *Ex parte Torres*, 943 S.W.2d 469, 475–76 (Tex.Crim.App.1997). Point five is overruled.

### Alleged Jury Charge Error

In her sixth point, appellant argues the jury instruction at the guilt/innocence stage was defective because it permitted the jurors to consider the issue of guilt under three disjunctive theories. No trial objection on this ground was made.

The jury instruction, in relevant part, provided:

Now if you find from the evidence beyond a reasonable doubt that on or about the 30th day of April, 1997, in Hood County, Texas, [appellant] did then and there knowingly, by omission, cause serious bodily injury to SARAH PATTERSON, a child younger than fifteen (15) years of age by failing to provide aid and protection to SARAH PATTERSON as she was being kidnapped by BOBBY WOODS, **or** by failing to report to law enforcement authorities and summon aid when she knew that BOBBY WOODS had committed the offense of kidnapping of SARAH PATTERSON, **or** by failing to notify and report to law enforcement that SARAH PATTERSON had been kidnapped by BOBBY WOODS ... then you will find the Defendant guilty of knowingly, by omission, causing serious bodily injury to a child younger than fifteen (15) years of age, as alleged in the indictment. (Emphasis added).

■ We find no error as to this issue. Where alternate theories of guilt are submitted to the jury in the disjunctive, a general verdict of guilt may be returned if the evidence is sufficient to support a finding under any of the theories submitted. *Brooks v. State,* 990 S.W.2d 278, 283 (Tex.Crim.App.1999). There is no requirement that the jury reach agreement on the preliminary factual issues which underlie the verdict. *Kitchens,* 823 S.W.2d at 258 (citing *Schad v. Arizona,* 501 U.S. 624, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991) (plurality op.)), *cert. denied,* 504 U.S. 958, 112 S.Ct. 2309, 119 L.Ed.2d 230 (1992).

Moreover, appellant's complaint is directed to only that portion of the jury instruction concerning the felony offense of knowing injury to a child by omission. Because of our disposition of appellant's

legal sufficiency challenge and modification of the judgment to the lesser included offense of reckless injury to a child, point six is moot.

██ Appellant's seventh point targets the lack of a jury instruction on the issue of "but for" causation under § 6.04(a) of the penal code. TEX. PENAL CODE ANN. § 6.04(a). As in the preceding point, no trial objection or special request was made concerning this issue. The State suggests an instruction under this statute was not requested because defense counsel "strategically chose to focus the jury's attention on other issues," and to avoid the risk of alienating the jury by arguing that Woods' conduct was alone sufficient to cause James' injuries and Sarah's death. We are skeptical that this rationale controlled counsel's decision since the instant case would appear to involve the type of circumstances under which a section 6.04 jury instruction might prove most beneficial to the defense. Nevertheless, we are constrained to overrule point seven because there is no showing that appellant suffered egregious harm, a prerequisite to reversal for unobjected-to error under *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim.App.1984) (op. on reh'g). Defense counsel was permitted to argue to the jurors that Woods, not appellant, murdered Sarah and injured James. In addition, any harm from the absence of the instruction is attenuated by our decision modifying the judgment to reflect a conviction for the lesser included offense of reckless injury to a child. The concurrent causation charge would have been of greater benefit to the defense against a claim of "knowing injury to a child," as opposed to "reckless injury to a child" because such a defense, under our facts, would have more significance to the greater offense. Point seven is overruled.

In her final point, appellant complains that the indictment and jury verdicts do not convict appellant of a felony offense. We quote appellant's argument verbatim: "The indictment, the court's application paragraphs and the signed jury verdicts refer to a child under the age of 15 years. However, § 22.04, Texas Penal Code, defines a child as a person **under 14 years of age**. Thus, Appellant is not properly convicted of offenses under § 22.04." (Emphasis added).

██ Appellant is mistaken. Section 22.04 does *not* define a child as a person "under 14 years of age." It defines a child as a person "*14 years of age* or younger." TEX. PENAL CODE ANN. § 22.04(c)(1) (Vernon Supp.2001)(emphasis added). Thus, an indictment, application paragraph, or verdict form that refers to a "child under the age of 15 years" is perfectly proper. A child 14 years of age or younger is necessarily a child under the age of 15 years. Moreover, as noted by the State, appellant did not object on this ground in the court below; therefore, the *Almanza* standard for unobjected-to error is again applicable. Because the ages of James, age 9, and Sarah, age 11, were not disputed at trial, appellant clearly did not suffer egregious harm. Point eight is overruled.

### Conclusion

Based on our disposition of appellant's legal sufficiency complaint, we modify the judgment of the trial court to show appellant stands convicted of two counts of reckless injury to a child by omission, resulting in serious bodily injury, second degree felonies, and affirm the judgment as modified. TEX. PENAL CODE ANN. § 22.04(e); TEX.R.APP. P. 43.2(b). We reverse the trial court's judgment as to punishment and remand the case to the trial court to conduct a new sentencing hearing in accordance with this opinion.

LIVINGSTON, J., filed a dissenting opinion.

LIVINGSTON, Justice dissenting.

I respectfully dissent. The majority opinion clearly lays out the three theories of responsibility tried by the State in proving the offense of knowingly, by omission, causing serious bodily injury to a child under Texas Penal Code Section 22.04(a)(1). TEX. PENAL CODE ANN. § 22.04(a)(1) (Vernon Supp.2001). However, it justifies its determination of legal insufficiency on only two of the trial theories: omission by failure to report to law enforcement authorities and summon aid immediately after Woods took Sarah and James (second theory) and by failure to disclose Woods' identity to law enforcement authorities the next morning when appellant finally reported them missing (third theory). The majority concludes that because there is no evidence from which to infer appellant knew with reasonable certainty that the sheriff's department would have intervened in a timely manner to prevent the injuries had she called 911 immediately or later informed them of Woods' identity, her omission was not a "knowing" omission.

While I disagree with the majority's conclusions as to these two theories, more importantly, I believe there is legally sufficient evidence to support the State's first theory of responsibility based on appellant's failure to come to the aid of Sarah and James while they were being assaulted in the house before they were kidnapped. Because we are required to review the evidence in the light most favorable to the jury's verdict, we are required to accept as true that appellant heard the assault on her children as it was taking place. If she heard the assault, then the evidence is sufficient to conclude the appellant knew with reasonable certainty that if she failed to act it was done so with awareness that serious bodily injury was reasonably certain to result. *Dusek v. State*, 978 S.W.2d 129, 134 (Tex.App.—Austin 1998, pet ref'd). I do not believe that the State was required to show that if appellant had intervened at that time she thought it would be a successful intervention, but only that if she failed to intervene she knew, with reasonable certainty the result, the serious bodily injury, would not be avoided. The majority requires too much when it says that she must have known with reasonable certainty the injury would not result "but for" her conduct. I also believe that is a mis-characterization of the State's position and section 6.04(a) of the penal code. TEX. PENAL CODE ANN. § 6.04(a). According to *Robbins v. State*, 717 S.W.2d 348, 351 (Tex.Crim.App.1986) (op. on reh'g), the "but for" requirement of 6.04 is met if the defendant's conduct and the other cause together may be sufficient to have caused the harm.

Because I believe the evidence supports the jury's finding of guilt by omission in failing to render aid when it might have made a difference, I respectfully dissent.