

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-08-028-CR

KIRK MARTIN BAGBY                                    APPELLANT

V.

THE STATE OF TEXAS                                         STATE

------------

FROM THE 30TH DISTRICT COURT OF WICHITA COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. Introduction

Appellant Kirk Martin Bagby appeals his conviction for robbery. In two issues, he claims that the evidence is legally and factually insufficient to support the jury's guilty verdict and that trial counsel was ineffective. We affirm.

----

[1] *See* Tex. R. App. P. 47.4.

## II. Facts

James Hamilton, his son Kyle, and Clyde Young traveled from Durant, Oklahoma, to Wichita Falls, Texas, to install vinyl siding. On May 29, 2007, after completing the day's work and eating dinner, James parked his truck in the parking lot in front of the Econo Lodge Motel and the men retired for the night to their room on the second floor.

Around three o'clock in the morning, Clyde woke up to go to the bathroom. He looked out the window to check the weather and saw the two passenger-side doors to James's truck open and appellant removing James's tools from inside the truck. Clyde yelled to James that someone was stealing tools from the truck. James bolted from the bed and out the door, screaming at appellant as he descended the stairs. Appellant looked up at James, scooped up some tools, and ran to his car, locking himself in just before James caught up and tried to punch out the window with his fist. Appellant started the motor, put the car in reverse, and backed over James's left leg and foot, knocking him to the pavement. Appellant then put the car in drive and turned the wheels toward James. Clyde had followed James to the parking lot and yelled for him to move out of the way. Appellant started driving the car toward James, but as James sprung to his feet, appellant put the car in reverse and drove away. Clyde noted the license plate number.

2

James returned to the room and called 9-1-1.  Police arrived within minutes, subsequently matched appellant to his license plate number, and prepared a photo line-up from which James and Clyde were able to identify appellant.

Appellant was tried before a jury for robbery by intentionally or knowingly threatening or placing James in fear of imminent bodily injury or death—by attempting to run him over with an automobile.  The jury returned a verdict of guilty, and the trial court sentenced appellant to seven years' confinement.

### III.  Legal and Factual Sufficiency

Appellant's first issue on appeal challenges the legal and factual sufficiency of the evidence to support the verdict.

### A.  Standards of Review

In reviewing legal sufficiency, we consider all the evidence in the light most favorable to the verdict and determine whether a rational juror, based on the evidence and reasonable inferences supported by the evidence, could have found the essential elements of the crime beyond a reasonable doubt.[2]

---

[2] *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

When reviewing the factual sufficiency of the evidence to support a conviction, we view all the evidence in a neutral light, favoring neither party.[3] We then ask whether the evidence supporting the conviction, although legally sufficient, is nevertheless so weak that the factfinder's determination is clearly wrong and manifestly unjust or whether conflicting evidence so greatly outweighs the evidence supporting the conviction that the factfinder's determination is manifestly unjust.[4]

To reverse under the second ground, we must determine, with some objective basis in the record, that the great weight and preponderance of all the evidence, though legally sufficient, contradicts the verdict.[5] Unless the record clearly reveals that a different result is appropriate, we must defer to the jury's determination of the weight to be given contradictory testimonial evidence because resolution of the conflict "often turns on an evaluation of credibility and demeanor, and those jurors were in attendance when the testimony was

---

[3] *Neal v. State*, 256 S.W.3d 264, 275 (Tex. Crim. App. 2008) *cert. denied, 129 S. Ct. 1037 (2009)*; *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006).

[4] *Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008); *Watson*, 204 S.W.3d at 414–15, 417.

[5] *Watson*, 204 S.W.3d at 417.

delivered."[6]  Thus, we must give due deference to the factfinder's determinations, "particularly those determinations concerning the weight and credibility of the evidence."[7]

### B.  Elements of Robbery

A person commits robbery when, in the course of committing theft, and with intent to maintain control of the property, he intentionally or knowingly threatens or places another in fear of imminent bodily injury or death.[8]

### C.  Discussion

Appellant claims that the evidence is legally and factually insufficient to support his robbery conviction because it does not show that he intentionally or knowingly threatened or placed James in fear of imminent bodily injury or death by attempting to run him over with an automobile.

James testified that while he was on the pavement after appellant had knocked him down by backing the car over him, he saw appellant aim the wheels at him, put the car in drive, and head back toward him.  Appellant looked him "square in the eye when he had put it back in drive and was heading right back toward me."  Clyde testified that "it looked like [appellant]

---

[6] *Johnson v. State*, 23 S.W.3d 1, 8 (Tex. Crim. App. 2000).

[7] *Id*. at 9.

[8] Tex. Penal Code Ann. § 29.02(a)(2) (Vernon 2003).

5

straightened up his wheels like he was gonna come back at James" and that "it looked like he was gonna try to come back on him, but James jumped up so quick he turned the other way and he took off."  James further testified that as appellant was trying to run over him he "absolutely" feared imminent bodily injury or death.  Both James and Clyde testified that appellant stopped and reversed direction only after James had regained his footing and moved out of the way.  Clyde testified that appellant's driving made him believe appellant was trying to run over James.

Viewed in the light most favorable to the verdict, a rational juror could find beyond a reasonable doubt that appellant intentionally or knowingly threatened or placed James in fear of imminent bodily injury or death by attempting to run over him with an automobile.[9]  Therefore, we hold that the evidence is legally sufficient.

Having held the evidence legally sufficient, we also hold that, viewed in a neutral light, the evidence is factually sufficient.  Appellant asserts that Clyde's testimony that "it looked like [appellant] was gonna try to come back on [James], but James jumped up so quick he turned the other way and he took off" conflicts with James's testimony and that it was more credible because

---

[9] *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Hooper*, 214 S.W.3d at 13.

Clyde was "acting rationally and maintaining distance" and "had [a] clear opportunity to view the entire situation."

Assuming without deciding that Clyde's testimony conflicts with James's testimony, we defer to the jury's determination of the weight to be given contradictory testimonial evidence because the record does not clearly reveal that a different result is appropriate.[10] Moreover, we find that the State's evidence was not so weak as to render the verdict unfair or manifestly unjust nor was the evidence that appellant claims does not support the verdict so overwhelming as to render the verdict unfair or manifestly unjust.[11]

Having found the evidence legally and factually sufficient, we overrule appellant's first issue.

### IV. Ineffective Assistance of Counsel

In his second issue, appellant claims that his trial counsel provided ineffective assistance by not requesting that the jury charge instruct the jury on the lesser included offense of either burglary of a vehicle or theft.

---

[10] *See Johnson*, 23 S.W.3d at 8.

[11] *See Watson*, 204 S.W.3d at 414–15, 417; *Johnson*, 23 S.W.3d at 11.

We apply a two-pronged test to ineffective assistance of counsel claims.[12] To establish ineffective assistance of counsel, appellant must show by a preponderance of the evidence that counsel's representation fell below the standard of prevailing professional norms and that there is a reasonable probability that, but for counsel's deficiency, the result of the trial would have been different.[13]

In evaluating the effectiveness of counsel under the first prong, we look to the totality of the representation and the particular circumstances of each case.[14] The issue is whether counsel's assistance was reasonable under all the circumstances and prevailing professional norms at the time of the alleged error.[15]

Review of counsel's representation is highly deferential, and the reviewing court indulges a strong presumption that counsel's conduct fell within a wide

---

[12] *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005); *Mallett v. State*, 65 S.W.3d 59, 62–63 (Tex. Crim. App. 2001); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999).

[13] *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064; *Salinas*, 163 S.W.3d at 740; *Mallett*, 65 S.W.3d at 62–63; *Thompson*, 9 S.W.3d at 812.

[14] *Thompson*, 9 S.W.3d at 813.

[15] *See Strickland*, 466 U.S. at 688–89, 104 S. Ct. at 2065.

8

range of reasonable representation.[16]  A reviewing court will rarely be in a position on direct appeal to fairly evaluate the merits of an ineffective assistance claim.[17]  "In the majority of cases, the record on direct appeal is undeveloped and cannot adequately reflect the motives behind trial counsel's actions."[18]  To overcome the presumption of reasonable professional assistance, "any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness."[19]  It is not appropriate for an appellate court to simply infer ineffective assistance based upon unclear portions of the record.[20]

The second prong of *Strickland* requires a showing that counsel's errors were so serious that they deprived the defendant of a fair trial, that is, a trial with a reliable result.[21]  In other words, appellant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result

---

[16] *Salinas*, 163 S.W.3d at 740; *Mallett*, 65 S.W.3d at 63.

[17] *Thompson*, 9 S.W.3d at 813–14.

[18] *Salinas*, 163 S.W.3d at 740 (quoting *Mallett*, 65 S.W.3d at 63).

[19] *Id.* (quoting *Thompson*, 9 S.W.3d at 813).

[20] *Mata v. State*, 226 S.W.3d 425, 432 (Tex. Crim. App. 2007).

[21] *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064.

of the proceeding would have been different.[22] A reasonable probability is a probability sufficient to undermine confidence in the outcome.[23] The ultimate focus of our inquiry must be on the fundamental fairness of the proceeding in which the result is being challenged.[24]

This case demonstrates the "inadequacies inherent in evaluating ineffective assistance claims on direct appeal."[25] Although appellant filed a motion for new trial, it does not assert that trial counsel's representation was deficient, nor is there anything in the record to show that the trial court held a hearing to inquire into the reasons for trial counsel's acts or omissions. Consequently, we cannot determine whether counsel's actions were grounded in sound trial strategy because the record is silent as to possible trial strategies, and we will not speculate on the reasons for those strategies.[26]

---

[22] *Id.* at 694, 104 S. Ct. at 2068.

[23] *Id.*

[24] *Id.* at 697, 104 S. Ct. at 2070.

[25] *See Patterson v. State,* 46 S.W.3d 294, 306 (Tex. App.—Fort Worth 2001, no pet.).

[26] *See id.* at 306; *Jackson v. State,* 877 S.W.2d 768, 771 (Tex. Crim. App. 1994); *cf. Lopez v. State*, 838 S.W.2d 758, 759 (Tex. App.—Corpus Christi 1992, no pet.) (holding that it is a reasonable trial strategy, and therefore not ineffective assistance of counsel, to forego requesting a lesser included offense instruction in favor of seeking a full acquittal on the charged offense).

We hold, therefore, that appellant has failed to show that counsel provided ineffective assistance, and we overrule his second issue.[27]

## V.  Conclusion

Having overruled appellant's issues, we affirm the judgment.

PER CURIAM

PANEL:  CAYCE, C.J.; GARDNER and WALKER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  March 5, 2009

---

[27] *See Mallett,* 65 S.W.3d at 68.