COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

NOS.
2-07-322-CR  

2-07-323-CR

 

 

KELLEY CAMACHO                                                              APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

             FROM THE 16TH
DISTRICT COURT OF DENTON COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

I. Introduction

Appellant Kelley Camacho appeals her two
convictions for possession of four grams or more but less than 200 grams of
methamphetamine.  We affirm.








II. 
Background Facts

In March 2006, a confidential informant (ACI@)
working with the Denton County Sheriff=s Office
picked up Jackie Patterson and drove him to a 7-Eleven in Lewisville.  When they arrived, Patterson met appellant,
who had agreed to sell him a quarter ounce of methamphetamine.  As the CI waited, Patterson climbed into
appellant=s car and rode with her to a
trailer park in Flower Mound, where she obtained a quarter ounce of
methamphetamine for him before returning him to the 7-Eleven.  When the CI confirmed that Patterson had
purchased methamphetamine, officers moved in, arresting Patterson and
appellant.

Upon searching appellant, the officers found a
glass pipe with methamphetamine residue in her apron.  In her purse, they found a black zippered bag
containing digital scales, plastic bags, marihuana, and methamphetamine.  When the officers frisked Patterson, they
found approximately eight gramsCslightly
more than a quarter ounceCof methamphetamine in his
pockets.

In July, after her release on bond, appellant
arranged another drug transaction in which she agreed to sell four grams of
methamphetamine to the employer of a second confidential informant (ACI2").








Posing as the employer, an undercover officer (AUO@) went
with CI2 to appellant=s apartment.  Once inside, appellant directed UO and CI2 to
the bedroom.  UO showed appellant three
hundred dollars in cash, and appellant motioned for him to lay it on a
desk.  UO watched as appellant weighed
4.6 grams of methamphetamine and set it on the desk.  As UO picked up the drugs, officers entered
the apartment, and arrested appellant. 
Appellant=s teenage son, who was present
during the arrest, then directed the officers to an additional 0.4 grams of
methamphetamine in appellant=s
bedroom.

The State charged appellant in separate
indictments for the March and July drug sales. 
Each indictment contained an enhancement paragraph alleging that
appellant had a prior conviction for a felony drug offense.  The two cases were consolidated for
trial.  A jury returned verdicts of
guilty on each, and after hearing evidence on punishment, assessed thirty years=
confinement for each conviction.  The
trial court sentenced appellant accordingly, ordering the sentences to run
concurrently.  Appellant brings fifteen
points on appeal.

III. Prior Conviction Evidence Admitted Before Enhancement
Paragraphs Read

In three points, appellant seeks a reversal for a
new punishment hearing because evidence of her prior conviction was admitted
before the State read the enhancement paragraphs alleging that conviction to
the jury.








In her first point, appellant claims that the
trial court erred by letting the jury consider evidence of the prior conviction
before the prosecutor read the enhancement paragraphs to the jury.  Appellant, however, has forfeited this
complaint.  To preserve a complaint for
our review, a party must have presented to the trial court a timely request, objection,
or motion that states the specific grounds for the desired ruling if they are
not apparent from the context of the request, objection, or motion.[2]  When the State offered State=s
Exhibit 36 as evidence of appellant=s prior
conviction, appellant  objected only that
the exhibit had not Abeen tied to [her] by
fingerprints or any other identifiers.@  We hold that this objection was insufficient
to preserve appellant=s claim that the trial court
erred by allowing the jury to consider evidence of her prior conviction before
the enhancement paragraphs were read. 
Accordingly, we overrule appellant=s first
point.[3]









Similarly, in her second and third points,
appellant contends that the trial court erred by not excluding, or at least
instructing the jury to disregard, all the testimony the State presented before
the  enhancement paragraphs were
read.  The record shows, however, that
appellant did not request that the trial court exclude or instruct the jury to
disregard the testimony before the enhancement paragraphs were read.[4]  Consequently, appellant did not preserve
these claims for our review.  We overrule
appellant=s second and third points.[5]

IV. 
Chemist=s Testimony

In her fourth point, appellant claims that the
trial court violated her rights under the Confrontation Clause by admitting
testimony from one chemist about laboratory results obtained by another chemist
who did not testify at appellant=s trial.

The substances recovered during appellant=s March
and July arrests were analyzed at the Texas Department of Public Safety
Laboratory in Garland.  DPS chemist Drew
Fout personally analyzed the substances from the March arrest, but another
chemist from the same lab analyzed the substances recovered in July.  Fout testified at appellant=s trial,
but the other chemist did not.








Fout explained that he and the nontestifying
chemist had used the same methods to analyze the substances seized during the
March and July arrests.  He testified
that all chemists at the Garland DPS lab are trained the same way and that part
of his training had been devoted to observing the more experienced
nontestifying chemist, who had worked at the DPS lab for twenty-five years.

He testified further, that, as an expert, he was
trained to evaluate the work of other experts and then to draw his own conclusions.  He had reviewed the nontestifying chemist=s case
notes and charts generated during her testing of the substances seized during
appellant=s July arrest before forming his
own opinion about the results of her work. 
Based upon his review, he opined that the exhibits she analyzedCState=s
Exhibits 22, 26, 27, and 31Call
contained methamphetamine.  Further, he
testified that the net weights of the exhibits were 3.93, 0.20, 1.39, and 0.35
grams, respectively. 

Appellant objected to Fout=s
testimony about the methods the nontestifying chemist used and the weights of
the exhibits.  She also objected to the
admission of the drug exhibitsCState=s
Exhibits 22, 26, 27, and 31.  Appellant
concedes, however, that she did not object to Fout=s
testimony that the composition of the exhibits contained methamphetamine.








As a result of her failure to object to this
evidence, her complaint that the trial court erred by admitting Fout=s
testimony that the exhibits contained methamphetamine is not preserved for our
review.[6]  Accordingly, we limit our analysis to Fout=s
testimony about the methods the nontestifying chemist employed; the trial court=s
admission of State=s Exhibits 22, 26, 27, and 31;
and Fout=s
testimony about the weights of the substances in those exhibits.

Appellant asserts that her inability to
cross-examine the nontestifying chemist who performed the testing rather than
Fout violated her right to confront witnesses under Crawford v. Washington.[7]  In Crawford, the United States Supreme
Court held that admitting a statement made by a nontestifying declarant offends
the Confrontation Clause of the Sixth Amendment if it was Atestimonial@ when
made and the defendant lacked a prior opportunity for cross-examination.[8]  Thus, Crawford applies to a
nontestifying declarant=s out-of-court statements that
are testimonial.








Fout=s
testimony about the methods used by the nontestifying chemist is not governed
by Crawford, however, because no out-of-court statement was admitted
through this part of his testimony. 
Rather, the testimony was Fout=s
in-court statement based upon his own personal knowledge acquired from having
trained and worked at the DPS laboratory. 
The Sixth Amendment concerns at issue in Crawford, therefore, do
not apply to this portion of Fout=s
testimony.

Nor do those concerns apply to the baggies of
controlled substances admitted as State=s Exhibits
22, 26, 27, and 31 because Crawford applies only to Astatements.@  A Astatement@ is
defined by Texas Rule of Evidence 801(a) as A(1) an
oral or written verbal expression or (2) nonverbal conduct of a person, if it
is intended by the person as a substitute for verbal expression.@[9]  Similarly, Federal Rule of Evidence 801(a)
defines a statement as an A(1) an
oral or written assertion or (2) nonverbal conduct of a person if it is
intended by the person as an assertion.@[10]  Baggies of controlled substances are not oral
or written verbal expressions, they are not oral or written assertions, and
they are not nonverbal conduct; therefore, they are not statements.  Accordingly, the trial court=s
admission of the exhibits did not implicate appellant=s
confrontation rights.













Turning to Fout=s
testimony about the weights of those exhibits, as determined
out-of-court by the nontestifying expert,[11]
we need not reach that issue because other evidence of the drugs= weights
came in from other sources without objection. 
Thus, the admission of this part of Fout=s
testimony had no effect on appellant=s
conviction or her punishment.  By the
time Fout testified, the State had already presented, without objection,
evidence that the amount appellant sold in July was at least four grams.  Sergeant Jeff Davis testified that the plan
for the undercover operation was to purchase four grams of methamphetamine from
appellant.  In addition, the UO testified
that the deal negotiated with appellant was to purchase four grams for
$300.  Further, during a telephone
conversation recorded between appellant and CI2, appellant told CI2 that she
had four grams ready to sell for $300. 
The UO identified State=s
Exhibit 22 as the bag of methamphetamine that he had purchased from
appellant.  He testified that he
personally witnessed her weighing the amount he bought from her and that the
scale displayed 4.6 grams.  Also, he
testified that, in addition to State=s
Exhibit 22, he seized from appellant=s
apartment baggies of methamphetamine that he identified as State=s
Exhibits 26, 27, and 31.  Sergeant Davis
testified that, after appellant=s
arrest, appellant=s son pointed out a quantity of
methamphetamine in appellant=s
bedroom weighing 0.4 grams, which the sergeant identified at trial as State=s
Exhibit 31.  Thus, even without Fout=s
testimony, the State presented evidence showing that the amount was over four
grams.  We hold, therefore, that Fout=s
testimony as to the weight of the substances seized in July had no effect on
the jury=s
deliberations.[12]  Appellant=s fourth
point is overruled.

V. 
Sufficiency of the Evidence

In her fifth, sixth, and fifteenth points,
appellant asks us to review the sufficiency of the evidence without certain
evidence she claims should  have been
excluded.  In conducting sufficiency
reviews in  criminal cases, however, we
consider all evidence whether or not properly admitted.[13]








With regard to appellant=s fifth
and sixth points, the evidence was legally and factually sufficient to show
that the quantity of methamphetamine that appellant sold to the UO was at least
four grams.  Fout testified that the
amounts seized from appellant=s
apartment during the July arrests and admitted as State=s
Exhibits 22, 26, 27, and 31 had a combined weight of over five grams.[14]  In addition, other evidence showed that the
methamphetamine seized in July was at least four grams.  The plan of the operation was to purchase
four grams of methamphetamine from appellant. 
Appellant can be heard on a recorded telephone call telling CI2 that she
had four grams ready to sell.  The UO saw
appellant weigh out 4.6 grams of methamphetamine and place it on the desk in
her bedroom.  Appellant=s son
pointed out to the arresting officers an additional 0.4 grams of
methamphetamine in appellant=s
bedroom.  We hold that the evidence was
legally and factually sufficient to show that appellant possessed four or more
grams.  Points five and six are
overruled.

In her fifteenth point, appellant claims that
there is no evidence linking her to the March drug transaction.  Appellant, however, ignores her confession,
admitted as State=s Exhibit 16, in which she
stated:








Jackie [Patterson] got in
my car and we left to go and get the methamphetamine for [the CI].  I went over to Angie Lamb=s trailer that is located
. . . in Flower Mound, Texas to see if she had the quarter ounce of
methamphetamine.  When I got to Angie=s she had about (1) ounce
of methamphetamine, and she fronted me the 1/4 ounce of methamphetamine for
Jackie.  Angie was expecting me to bring
her back $275.00 as payment for the methamphetamine.

. . . I put a little
methamphetamine in a bag for me, and in a second bag for Jackie.  I drove Jackie back to the 7-11 to meet with
[the CI].  During the ride back to the
7-11[,] I gave Jackie the 1/4 ounce  of
methamphetamine to give to the [CI].

 

We hold that the evidence is both legally and factually sufficient to
support appellant=s conviction for the March drug
sale.  Point fifteen is overruled.

VI. 
Appellant=s Written Statement

In her eighth and ninth points, appellant claims
that her written statement admitted as State=s
Exhibit 16 was involuntary and violated article 38.22 because warnings related
to an indigent accused=s rights to appointed counsel do
not appear on its face as required by the code of criminal procedure.  Appellant=s
objection at trial, however, was that the statement violated article 38.22
because it was an oral statement. 
Because her points on appeal do not comport with the objection raised at
trial, we overrule appellant=s eighth
and ninth points.[15]








In her tenth point, appellant claims that the
trial court erred by not instructing the jury to disregard her written
statement if it found that appellant had not been given the warnings required
by code of criminal procedure article 38.22, section 2.  Appellant concedes, however, that she did not
request such an instruction and that the trial court has no duty to give an
instruction sua sponte.  We hold,
therefore, that the issue was not preserved, and consequently, the trial court
was not required to instruct the jury to disregard the statement.[16]  We overrule appellant=s tenth
point.

VII. 
Effectiveness of Counsel

In her seventh and eleventh points, appellant alleges
that her trial counsel provided ineffective assistance of counsel.








We apply a two-pronged test to ineffective
assistance of counsel claims.[17]  First, appellant must show that counsel=s
performance was deficient, which requires showing that counsel made such
serious errors that he was not functioning as the Acounsel@
guaranteed by the Sixth Amendment.[18]  Counsel=s
performance is deficient only if it fell below an objective standard of
reasonableness measured by prevailing professional norms.[19]  The record must be sufficiently developed to
overcome a strong presumption that counsel provided reasonable assistance.[20]  Our scrutiny of counsel=s
performance must be highly deferential, making every effort to eliminate the
distorting effects of hindsight.[21]


Second, appellant must show that counsel=s
deficient performance prejudiced the defense; this requires showing that
counsel=s errors
were so serious as to deprive the defendant of a fair trial.[22]  Appellant must show that there is a
reasonable probability that, but for counsel=s
deficiency, the result of the trial would have been different.[23]








In a heading identifying her seventh point,
appellant alleges that trial counsel was ineffective for failing to object to
Fout=s
testimony that testing on the substance seized in July showed it to be
methamphetamine.  Apart from the heading,
appellant=s briefing devotes nothing more
to the issue.  Accordingly, her point is
inadequately briefed.[24]

Moreover, even had appellant objected to Fout=s
testimony that the substance was methamphetamine, her objection would have been
properly overruled under what appellant concedes is the current state of the
law in Texas; that is, that one expert may testify as to his or her opinion
based upon the findings of another expert.[25]  Because the trial court properly would have
overruled the objection appellant faults her counsel for not raising, she
cannot show that counsel=s performance was
constitutionally deficient.[26]  We overrule appellant=s
seventh point.

In her eleventh point, appellant urges that her
trial counsel rendered ineffective assistance by failing to preserve points
eight and nine, discussed above, and by failing to request a jury instruction
on the voluntariness of State=s
Exhibit 16 as urged in point ten.








A claim of ineffective assistance of counsel must
be firmly grounded in, and supported by, the record.[27]  When the record is silent as to possible
trial strategies employed by defense counsel, we will not speculate on the
reasons for those strategies.[28]

There is a substantial risk of failure when a
claim of ineffective assistance of counsel is brought on direct appeal.[29]  AUnder
normal circumstances, the record on direct appeal will not be sufficient to
show that counsel=s representation was so
deficient and so lacking in tactical or strategic decisionmaking as to overcome
the presumption that counsel=s
conduct was reasonable and professional.@[30]








This case demonstrates the Ainadequacies
inherent in evaluating ineffective assistance claims on direct appeal.@[31]  Appellant did not file a motion for new trial
to afford the trial court an opportunity to hold a hearing and inquire into the
reasons for trial counsel=s acts or omissions.  Consequently, we cannot determine whether
counsel=s
actions were grounded in sound trial strategy because the record is silent as
to possible trial strategies, and we will not speculate on the reasons for
those strategies.[32]  Nor is this a case where the trial record
alone is sufficient to support appellant=s claim
that counsel was ineffective.[33]  Therefore, appellant has failed to meet the
first prong of Strickland.  We
overrule appellant=s eleventh point.

VIII. 
Informants and Accomplices

In her twelfth and thirteenth points, appellant
claims the trial court abused its discretion by not instructing the jury on
accomplice and informant testimony, respectively.  No accomplice or informant testified at appellant=s
trial.  Therefore, points twelve and
thirteen are overruled.

IX. 
Recorded Telephone Conversation

In her fourteenth point, appellant claims that
the trial court abused its discretion by admitting State=s
Exhibit 1, a recording of a telephone conversation between the CI and Jackie
Patterson because the recording was hearsay. 
On the recording, the CI and Patterson can be heard discussing their
plans for the CI to pick up Patterson and take him to appellant=s place
of employment.








A statement by a co-conspirator of a party during
the course and in furtherance of the conspiracy that is offered against a party
is not hearsay.[34]  The record shows that Patterson and appellant
had agreed to a drug transaction and that appellant delivered to Patterson a
quarter ounce of methamphetamine. 
Patterson, therefore, was a party to the offense.  His out-of-court statements made in
furtherance of the conspiracy to commit the offense were, therefore, not
hearsay.

As to the CI=s
statements admitted in State=s
Exhibit 1, our review of State=s
Exhibit 1 reveals that it recorded the CI discussing her plans with Patterson
to pick him up and drop him off in Lewisville. 
Under the rules of evidence, a statement of a declarant=s then
existing plan is an exception to the hearsay rule.[35]  We hold that the trial court did not abuse
its discretion by overruling appellant=s
objections to State=s Exhibit 1.  Point fourteen is overruled.








X. Conclusion

Having overruled all of appellant=s
points, we affirm the judgment.

 

PER
CURIAM

 

 

PANEL:  CAYCE, C.J.; LIVINGSTON and GARDNER, JJ.

 

DO NOT PUBLISH        

Tex. R. App. P. 47.2(b)

 

DELIVERED:  July 30, 2009











[1]See Tex. R. App. P. 47.4.





[2]Tex. R. App. P.
33.1(a)(1); Mosley v. State, 983 S.W.2d 249, 265 (Tex. Crim. App. 1998)
(op. on reh=g), cert. denied,
526 U.S. 1070 (1999).





[3]See Tex. R. App. P.
33.1(a)(1); Heidelberg v. State, 144 S.W.3d 535, 537 (Tex. Crim. App.
2004); Ridge v. State, 855 S.W.2d 234, 235 (Tex. App.CFort Worth 1993, no
pet.).





[4]See Dill v. State, 697 S.W.2d 702, 709
(Tex. App.CCorpus Christi 1985, pet.
ref=d) (holding error
preserved when defendant asked that evidence heard before the plea be removed
from the jury's consideration).





[5]See Tex. R. App. P.
33.1(a)(1); Layton v. State, 280 S.W.3d 235, 238_39 (Tex. Crim. App. 2009).





[6]See Tex. R. App. P.
33.1(a)(1); Melendez-Diaz v. Mass., 129 S. Ct. 2527, 2534 (2009) (AThe right to
confrontation may, of course, be waived, including by failure to object to the
offending evidence. . .@).





[7]541 U.S. 36, 124 S. Ct.
1354 (2004).





[8]Id. at 68, 124 S. Ct. at
1374.





[9]Tex. R. Evid. 801(a).





[10]Fed. R. Evid. 801(a).





[11]Recently, the United
States Supreme Court has held that a certificate of a state laboratory analyst
stating that material seized by police and connected to a criminal defendant is
cocaine of a certain quantity is Atestimonial@ evidence subject to the demands of the
Confrontation Clause as set forth in Crawford.  Melendez-Diaz, 129 S. Ct. at
2529.  In Melendez-Diaz, in a
prosecution for drug trafficking, the state had submitted three Acertificates of analysis@ showing the results of
forensic testing performed on substances seized from the defendant.  Id at 2531.  The analyst or analysts who prepared the
certificates did not testify at trial.  See
id.





[12]See Clay v. State, 240 S.W.3d 895, 904
(Tex. Crim. App. 2007); Davis v. State, 203 S.W.3d 845, 852 (Tex.
Crim. App. 2006), cert. denied, 549 U.S. 1344 (2007).





[13]See Wilson v. State, 7 S.W.3d 136, 141 (Tex.
Crim. App. 1999); Johnson v. State, 967 S.W.2d 410, 411 (Tex. Crim. App.
1998).





[14]The total weight of the
drugs recovered during the July arrest was 5.87 grams.  State=s Exhibit 22 weighed 3.93, State=s Exhibit 26 weighed
0.20, State=s Exhibit 27 weighed
1.39, and State=s Exhibit 31 weighed 0.35
grams.





[15]See Heidelberg, 144 S.W.3d at 537; Bell
v. State, 938 S.W.2d 35, 54 (Tex. Crim. App. 1996), cert. denied,
522 U.S. 827 (1997); Greenwood v. State, 948 S.W.2d 542, 549B50 (Tex. App.CFort Worth 1997, no
pet.); Bridges v. State, No. 02-07-00069-CR, 2008 WL 4052959, at *1
(Tex. App.CFort Worth Aug. 29, 2008,
pet. ref=d) (mem. op., not
designated for publication).





[16]See Oursbourne v. State, 259 S.W.3d 159, 176
(Tex. Crim. App. 2008).





[17]Strickland v. Washington, 466 U.S. 668, 687, 104
S. Ct. 2052, 2064 (1984); Salinas v. State, 163 S.W.3d 734, 740 (Tex.
Crim. App. 2005); Mallett v. State, 65 S.W.3d 59, 62B63 (Tex. Crim. App.
2001); Thompson v. State, 9 S.W.3d 808, 812 (Tex. Crim. App.
1999).





[18]Strickland, 466 U.S. at 687, 104 S.
Ct. at 2064.





[19]Id. at 688B89, 104 S. Ct. at 2065.





[20]Bone v. State, 77 S.W.3d 828, 833 &
n.13 (Tex. Crim. App. 2002); Thompson, 9 S.W.3d at 813B14.





[21]Strickland, 466 U.S. at 689, 104 S.
Ct. at 2065.





[22]Id. at 687, 104 S. Ct. at
2064.





[23]Id. at 694, 104 S. Ct. at
2068.





[24]See Tex. R. App. P. 38.1(i);
Tong v. State, 25 S.W.3d 707, 710 (Tex. Crim. App. 2000), cert.
denied, 532 U.S. 1053 (2001); Grotti v. State, 209 S.W.3d
747, 778 (Tex. App.CFort Worth 2006), aff=d, 273 S.W.3d 273 (Tex.
Crim. App. 2008).





[25]See Martinez v. State, 22 S.W.3d 504, 508
(Tex. Crim. App. 2000).





[26]See Strickland, 466 U.S. at 687.





[27]Thompson, 9 S.W.3d at 814; Jackson
v. State, 973 S.W.2d 954, 955 (Tex. Crim. App. 1998).





[28]See Jackson v. State, 877 S.W.2d 768, 771
(Tex. Crim. App. 1994).





[29]Thompson, 9 S.W.3d at 813.





[30]Bone, 77 S.W.3d at 833.





[31]Patterson v. State, 46 S.W.3d 294, 306 (Tex.
App.CFort Worth 2001, no
pet.).





[32]See Jackson, 877 S.W.2d at 771; Patterson,
46 S.W.3d at 306.





[33]See Andrews v. State, 159 S.W.3d 98, 103
(Tex. Crim. App. 2005); Thompson, 9 S.W.3d at 813.





[34]Tex. R. Evid.
801(e)(2)(E).





[35]Tex. R. Evid. 803(3).