NO. 07-08-00442-CR

 

IN THE COURT OF APPEALS

 

FOR THE
SEVENTH DISTRICT OF TEXAS

 

AT
AMARILLO

 

PANEL B

 



OCTOBER
25, 2010

 



 

JIMMY L. ALEMAN, APPELLANT

 

v.

 

THE STATE OF TEXAS, APPELLEE 



 



 

 FROM THE 140TH DISTRICT COURT OF LUBBOCK
COUNTY;

 

NO. 2007-417,499; HONORABLE JIM BOB DARNELL, JUDGE



 



 

Before QUINN,
C.J., and CAMPBELL and HANCOCK, JJ.

 

 

MEMORANDUM OPINION

 

Appellant Jimmy L. Aleman appeals
from his jury conviction for the offense of intentional or knowing injury to a
child[1]
and the resulting sentence of 99 years of imprisonment in the Institutional
Division of the Texas Department of Criminal Justice.  Through three issues, appellant contends the
evidence was legally and factually insufficient to support his conviction and the
trial court erred by denying appellant=s requested charge on voluntariness.  We will affirm.

Background

The injured child was appellant’s
twenty-eight-month-old son.  The child’s
head injury occurred during an afternoon in August 2007 at the home in Lubbock
where appellant lived with his wife, their son and their three-year-old
daughter.  Appellant’s wife was at work
at the time, and appellant was home with the children.

Testimony showed that appellant
called his wife at work, telling her their son was jumping on the couch, fell
off and hit his head on a table.  She
told appellant to call 911, and she hurried home.  The recording of appellant’s 911 call was admitted into evidence.  The jury heard appellant tell the 911
operator that his son “jumped off the sofa.”

A paramedic who was among those
responding to the 911 call testified that appellant told her the child had
fallen off the couch and hit his head on the floor.  The child was unconscious, and although the
paramedic did not feel swelling or soft places on the child=s head, he exhibited symptoms of head
injury.  The paramedic observed “decerebrate posturing,” in which the child’s “head went
straight back.  His arms went stiffened
out, and his legs stiffened out.  That=s indicative of a head injury.@[2]  From the apparent severity of his injury, the
paramedic doubted it resulted only from a fall from the low couch onto the
carpeted floor.

After paramedics stabilized the child
they transported him to Covenant Children’s Hospital.  The emergency room physician also found the
child nonresponsive.  A CT scan revealed
a large subdural hematoma on the right side of the child’s head.  Surgery followed to remove the hematoma and
lessen pressure inside the child’s skull. 
Photos taken in the hospital show a large C-shaped surgical wound on the
right side of the child’s head.  He spent
two months in the hospital, and at the time of trial remained in what his
mother described as a “semi-coma.”  He
was not then ambulatory, did not speak, did not react
to his surroundings and was fed by tube.

In the days after the injury, in
response to questions about its cause, appellant began to modify his version of
the events.  The next day after the
injury, appellant told his wife that, while playing, he had thrown his son Aat the sofa@ from the entryway of the living
room.  The same
day, after Miranda warnings,
appellant signed a written statement to police stating he liked to play with
his son, and “all of our family says I play too rough with him.”  Appellant told how on that day he played with
his son by spinning around while holding the boy by his wrists until they were dizzy, and later by throwing him up in the air and catching
him.  On the last throw, appellant threw
the boy up "as hard as I could and I threw him over my head and out of my
reach."  Appellant said he failed to
catch the child and his head hit the floor.

The second day after the
injury, appellant gave a second written statement to police, in which he said
his description of his playful activities in his previous statement was
accurate, but that the child really was not hurt when appellant failed to catch
him after throwing him up in the air. 
The statement said the child actually was hurt when appellant
"threw him across the room in a superman type throw."  In this second written statement, appellant said he threw his
son Ain an underhand throw like a fast
pitch softball with both hands[,]@ intending Ato throw him onto the couch but he
missed and he landed on his head, the back . . . .@ 


Both of appellant’s
police interviews also were audio-recorded, and the jury heard both recordings. 
During the second interview, appellant reiterated he threw the child,
intending him to reach the couch, and insisted he intended no harm to him.  Appellant cried during the interview,
asserting he would never intentionally hurt his son.

Appellant did not testify at
trial.  He presented testimony from his
former in-laws.[3]
Both testified they never observed abusive behavior
by appellant toward his children, and did not think appellant intentionally
hurt his son.

In argument, appellant
conceded before the jury that his conduct with his son was either reckless or
criminally negligent, but steadfastly denied any intentional or knowing conduct
with respect to the injury.  

The court’s charge gave the jury the
choices of finding appellant not guilty, or finding him guilty of causing his
son’s injuries intentionally or knowingly; guilty of causing the injuries
recklessly; or guilty of causing the injuries by criminal negligence.  The jury found him guilty of the most serious
of the offenses, finding he caused the injuries intentionally or knowingly.

Analysis

Issues One and Two - Sufficiency of
the Evidence

In appellant=s first issue, he challenges the
legal sufficiency of the evidence to support his conviction.  He does not contest the sufficiency of the
evidence he caused his son’s injury nor the sufficiency of the evidence it
constituted serious bodily injury.[4]
Appellant’s contention focuses instead on the evidence he acted with the mental state required to support a conviction under §
22.04(a) of the Penal Code. 
Like at trial, he argues the evidence shows at most that he acted
recklessly.  We disagree, and will
overrule the issue.

In reviewing issues of evidentiary
sufficiency, an appellate court views the evidence in the light most favorable
to the verdict to determine whether, based on that evidence and reasonable
inferences therefrom, a rational jury could have
found each element of the offense beyond a reasonable doubt.  Brooks v. State, No. PD-0210-09, 2010 Tex.
Crim. App. LEXIS 1240 (Tex.Crim.App. Oct. 6,
2010); Swearingen v. State, 101 S.W.3d 89, 95 (Tex.Crim.App.
2003); Conner v. State, 67 S.W.3d 192, 197 (Tex.Crim.App.
2001) (citing Jackson v. Virginia,
443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560
(1979)).  The standard “gives full play
to the responsibility of the trier of fact fairly to
resolve conflicts in the testimony, to weigh the evidence, and to draw
reasonable inferences from basic facts to ultimate facts.”  Jackson,
443 U.S. at 319.  If, given all of the
evidence, a rational jury would necessarily entertain a reasonable doubt of the
defendant=s guilt, due process requires that we
reverse and order a judgment of acquittal. 
Swearingen, 101 S.W.3d at 95 (citing Narvaiz v. State, 840
S.W.2d 415, 423 (Tex.Crim.App. 1992)), cert.
denied, 507 U.S. 975,113 S.Ct. 1422, 122 L.Ed.2d
791 (1993).  Circumstantial evidence is
as probative as direct evidence in establishing guilt, and circumstantial
evidence alone can be sufficient to do so. 
Hooper v. State, 214 S.W.3d 9 (Tex.Crim.App.
2007) (citing Guevara v. State,
152 S.W.3d 45, 49 (Tex.Crim.App. 2004)).  A conclusion of guilt can rest on the
combined and cumulative force of all incriminating circumstances.  Conner,
67 S.W.3d at 197.

Injury to a child is a “result of
conduct” offense; the culpable mental state relates not to the nature of or the
circumstances surrounding the defendant’s charged conduct, but to the result of
the conduct.  Patterson v. State, 46 S.W.3d 294, 301 (Tex.App.--Fort
Worth 2001, pet. refused) (citing Haggins
v. State, 785 S.W.2d 827, 828 (Tex.Crim.App.1990)); see Williams v. State, 235 S.W.3d 742, 750 (Tex.Crim.App.
2007) (noting injury to child is “result-oriented offense requiring a mental
state that relates not to the specific conduct but to the result of that
conduct”).  We may affirm the jury’s
general verdict of guilt if we find the evidence
sufficient to sustain a finding beyond a reasonable doubt that appellant acted
either intentionally or knowingly with regard to his son’s injuries.  See
Patterson, 46 S.W.3d at 300 (where jury authorized to convict on more than
one theory, general verdict of guilt may be sustained if evidence supports
conviction under at least one theory). 

Under the Penal Code, a person acts
intentionally, or with intent, with respect to a result of his conduct when it
is his conscious objective or desire to cause the result.  Tex. Penal Code Ann. '
6.03(a) (Vernon 2003).  A person
acts knowingly, or with knowledge, with respect to a result of his conduct when
he is aware that his conduct is reasonably certain to cause the result.  Tex. Penal Code Ann. '
6.03(b) (Vernon 2003).  Thus,
proof that a defendant knowingly caused injury to a child requires evidence
that he was aware with reasonable certainty that the injury would result from
his conduct.  Patterson, 46 S.W.3d at 302.

A person acts recklessly, or is
reckless, with respect to the result of his conduct when he is aware of but
consciously disregards a substantial and unjustifiable risk that the result
will occur. The risk must be of such a nature and degree that its disregard
constitutes a gross deviation from the standard of care that an ordinary person
would exercise under all the circumstances as viewed from the actor's standpoint.  Tex. Penal Code Ann. '
6.03(c) (Vernon 2003). 

A defendant’s culpable state of mind
is almost invariably proven by circumstantial evidence.  Morales
v. State, 828 S.W.2d 261, 263 (Tex.App.--Amarillo
1992), aff’d,
853 S.W.2d 583 (Tex.Crim.App. 1993); accord, Montgomery v. State, 198 S.W.3d 67, 87 (Tex.App.--Fort
Worth 2006 pet. refused).  Intent can be
inferred from the acts, words and conduct of the accused, and from the extent
of the victim’s injuries and the relative size and strength of the parties.  Patrick v. State, 906 S.W.2d 481, 487 (Tex.Crim.App.
1995).  

The State argues the jury could infer
appellant’s guilty conscience caused him to lie to his wife, emergency
responders and police about how his son’s injury was incurred.  The paramedic and others quickly recognized
it was unlikely to have been incurred in a fall from the couch, and appellant’s
second statement to police acknowledges he lied in his first interview because
he “thought it sounded better and that it would make more sense that I didn’t
catch him versus what really happened.” 
The State is correct that a jury may infer from a person’s lying that
“he had something to hide.” Couchman v. State, 3 S.W.3d 155, 164 (Tex.App.--Fort Worth 1999, pet. refused).  While we do not find the inference especially
strong as evidence here that appellant caused the injuries intentionally or
knowingly, rather than recklessly or negligently, we agree the jury rationally
could have assigned some strength to it.  


We find further support
for the jury’s verdict in the medical testimony.  Although the precise nature of the child’s
brain injury is not well described in the record, the medical testimony is to
the effect that the subdural hematoma was the result of blunt force
trauma.  The formerly
active child was unconscious when paramedics arrived at the home, and remained
in a semi-conscious condition at the time of trial, no longer responsive to his
surroundings.  Although the emergency
room physician acknowledged the possibility the child’s injury was incurred by
contact with the floor as described by appellant in his statements, if
he were Atossed hard enough,@ the physician also testified he had not seen a subdural hematoma resulting from
“a play accident.”  He elsewhere noted
that the injury “would have taken considerable force” and that it carried a
significant risk for death.[5]


The jury was free to believe that the child’s head injury occurred
in the manner appellant last described to police, that is, that appellant
tossed the child underhanded toward the sofa but the child landed on his head
short of the sofa.  The emergency room
physician gave opinion testimony concerning the likelihood of the child’s head
injury occurring in that manner.  The
physician testified:

Q.        Person
standing right in front of that picture playfully tosses a child towards the
direction of the sofa, thinking he’s going to make the sofa, if . . . the child
doesn’t make it, and lands on the floor, that’s going to cause a subdural
hematoma?  

A.        That
I would . . . not find credible.

Q.        Why
not?

A.        If what you
described was that was a toss would have been an arc, and if you throw the
child straight up in the air and have him come down on his head, that might
have imparted that much injury.  But a
gentle curve that would have put him sliding across
the floor, less likely.

Q.        Assuming
the child landed on his head?

A.        He’d
have to land straight on the head and have a good arc.

Q.        In other
words, almost be in front of that sofa with his legs up; is that correct?  

A.        That
would be . . . possible.

 

There was evidence that
the sofa was some eight feet from the spot from which appellant said he tossed
his son, and that the child weighed about twenty-six pounds.  From the testimony, the jury thus could have
concluded that appellant tossed his son in “a good arc” over that distance such
that he landed “straight on the head.” 
We believe a jury reasonably could infer that such an action by
appellant was accompanied by an awareness that it was reasonably certain to
cause serious head injury.[6]  The evidence supports a rational conclusion
appellant acted “knowingly.”[7]

Appellant’s second issue asserts the
evidence supporting the jury’s finding he
intentionally or knowingly caused his son’s injury is factually
insufficient.  In Brooks v. State, No. PD-0210-09, 2010 Tex. Crim. App. LEXIS 1240 (Tex.Crim.App.
Oct. 6, 2010), the Court of Criminal Appeals abandoned factual sufficiency
analysis under Clewis v. State, 922 S.W.2d 126 (Tex.Crim.App. 1996), and held that the only standard to be
applied when determining the sufficiency of evidence to support an element of a
criminal offense that the State is required to prove beyond a reasonable doubt
is that established by Jackson v.
Virginia.[8]
The previously-applied factual sufficiency standard considers whether the
evidence supporting guilt, though legally sufficient, is so weak that the jury=s verdict seems clearly wrong and
manifestly unjust, or evidence contrary to the verdict is such that the jury=s verdict is against the great weight
and preponderance of the evidence.  Grotti
v. State, 273 S.W.3d 273, 283 (Tex.Crim.App.
2008); Watson v. State, 204 S.W.3d 404, 414-15 (Tex.Crim.App.
2006).  Under that standard, the
ultimate question is whether, considering all the evidence in a neutral light,
the jury was rationally justified in finding guilt beyond a reasonable
doubt.  Grotti, 273
S.W.3d at 283.  Even had we
applied such a standard to review of the evidence, we could not sustain
appellant’s contention.  From our review
of the entire record, the finding of appellant’s knowingly injurious conduct
was neither clearly wrong and manifestly unjust nor
against the great weight and preponderance of the evidence. 

We overrule appellant’s issues one
and two.

Issue Three - Jury Charge

In his third issue,
appellant contends the trial court erred when it denied his request to include
in the jury charge a voluntariness instruction pursuant to § 6.01(a) of the
Penal Code, which provides, Aa person commits an offense only if he
voluntarily engages in conduct, including an act, an omission, or possession.@  See Tex. Penal Code Ann. ' 6.01(a) (Vernon
2003).  

A[A]n accused is entitled
to an affirmative instruction on any defensive issue raised by the evidence,
whether that evidence is weak or strong, unimpeached
or contradicted, and regardless of what the trial court may . . . think about
the credibility of the defense.@  Valenzuela v. State, 943 S.W.2d 130, 131 (Tex.App.--Amarillo 1997, no pet.) (citing
Hamel v. State, 916 S.W.2d 491, 493 (Tex.Crim.App.
1996)). We review alleged charge error by answering two questions: (1) whether
error actually existed in the charge; and (2) whether sufficient harm resulted
from the error to result in reversal.  Ngo v. State, 175 S.W.3d 738, 744 (Tex.Crim.App.
2005); Hutch v. State, 922 S.W.2d 166, 170‑71 (Tex.Crim.App.1996).

We agree with the State
that the evidence does not raise an issue of the voluntariness of appellant’s
conduct, as the concept of voluntariness has been applied in caselaw.  The
evidence appellant sees as raising the issue is
contained in his statements to police, where he told, among other versions,
that his son’s injury occurred when he tossed his son up into the air but
failed to catch him, allowing his head to hit the floor.  Appellant argues the jury could have seen his
failure to catch the child as an involuntary act, likening his failure to catch
him to the “physical reflex” referred to in caselaw.  See
Rogers v. State, 105 S.W.3d 630, 638 (Tex.Crim.App.
2003) (noting Avoluntariness@ refers to one’s own
physical body movements; and AIf those physical movements are the nonvolitional result of someone else’s act, are set in
motion by some independent non‑human force, are caused by a physical
reflex or convulsion, or are the product of unconsciousness, hypnosis or other nonvolitional impetus, that movement is not
voluntary”).  We see nothing involuntary
in the action appellant described in his statement, that of tossing his son in
the air.  That he intended to catch him
but did not is simply another way of saying he did not intend the result of his
conduct.  “Conduct [is not] rendered
involuntary merely because an accused does not intend the result of his
conduct.”  Id., (quoting Adanandus v. State,
866 S.W.2d 210, 230 (Tex.Crim.App. 1993)).  Appellant was not entitled to an instruction
on voluntariness. His third issue is overruled.

Having overruled each of
appellant=s three issues, we affirm
the judgment of the trial court.

 

                                                                                                James
T. Campbell

                                                                                                            Justice

 

Do not publish.

 

            








 











[1]
See Tex. Penal Code
Ann. ' 22.04 (Vernon
Supp. 2010).  This is a first degree
felony punishable by imprisonment for life or for any term of not more than 99
years or less than 5 years and a fine not to exceed $10,000.  See Tex. Penal Code Ann. '' 12.32 (Vernon
Supp. 2010); 22.04(e) (Vernon 2010).  

 





[2] The paramedic also noted that when the child opened his
eyes, Athey would veer straight to the
left, which is another sign of a head injury, a brain injury.@





[3] By the time of trial, appellant and
his wife had divorced.  She testified she
divorced appellant after deciding the injury to their son was not “an
accident.”

 





[4] “‘Serious bodily injury’ means bodily injury that creates a
substantial risk of death or that causes death, serious permanent
disfigurement, or protracted loss or impairment of the function of any bodily
member or organ.”  Tex. Penal Code Ann. §
1.07(a)(46) (Vernon Supp. 2010).

 





[5] The record indicates appellant at the time was twenty-two
years old, about six feet tall, and weighed about 200 pounds.





[6] Appellant’s former wife also
agreed that appellant, as a parent and as she saw him around the children, Awould
know that throwing a child across the room like a fast pitch softball would
injure that child.@

 





[7] Appellant=s son was born prematurely, and
spent four months in the hospital at birth. 
He underwent four surgeries. He was partially deaf and wore hearing
aids. Development of
the child’s speech was delayed and he was learning to sign. The State argues
the jury could have inferred appellant caused his son’s injury intentionally or
knowingly from testimony appellant was “quick tempered,” was immature, was
frustrated by his son’s partial deafness and difficulty in communication,
favored the daughter over the son, left most child-rearing duties to his wife,
and was required to have the children home with him that day because the family
awoke late and his wife hurriedly took their only vehicle to work. Appellant
was not employed at the time and the water to their home was turned off because
they could not pay the bill.  We do not
find it necessary to evaluate the inferences the jury rationally could have
drawn from such evidence.

 





[8] 443
U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).