NO. 07-08-00442-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

OCTOBER 25, 2010

JIMMY L. ALEMAN, APPELLANT

v.

THE STATE OF TEXAS, APPELLEE

FROM THE 140TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2007-417,499; HONORABLE JIM BOB DARNELL, JUDGE

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

**MEMORANDUM OPINION**

Appellant Jimmy L. Aleman appeals from his jury conviction for the offense of intentional or knowing injury to a child[1] and the resulting sentence of 99 years of imprisonment in the Institutional Division of the Texas Department of Criminal Justice. Through three issues, appellant contends the evidence was legally and factually

---

[1] *See* Tex. Penal Code Ann. § 22.04 (Vernon Supp. 2010). This is a first degree felony punishable by imprisonment for life or for any term of not more than 99 years or less than 5 years and a fine not to exceed $10,000. *See* Tex. Penal Code Ann. §§ 12.32 (Vernon Supp. 2010); 22.04(e) (Vernon 2010).

insufficient to support his conviction and the trial court erred by denying appellant's requested charge on voluntariness. We will affirm.

## Background

The injured child was appellant's twenty-eight-month-old son. The child's head injury occurred during an afternoon in August 2007 at the home in Lubbock where appellant lived with his wife, their son and their three-year-old daughter. Appellant's wife was at work at the time, and appellant was home with the children.

Testimony showed that appellant called his wife at work, telling her their son was jumping on the couch, fell off and hit his head on a table. She told appellant to call 911, and she hurried home. The recording of appellant's 911 call was admitted into evidence. The jury heard appellant tell the 911 operator that his son "jumped off the sofa."

A paramedic who was among those responding to the 911 call testified that appellant told her the child had fallen off the couch and hit his head on the floor. The child was unconscious, and although the paramedic did not feel swelling or soft places on the child's head, he exhibited symptoms of head injury. The paramedic observed "decerebrate posturing," in which the child's "head went straight back. His arms went stiffened out, and his legs stiffened out. That's indicative of a head injury."[2] From the apparent severity of his injury, the paramedic doubted it resulted only from a fall from the low couch onto the carpeted floor.

---

[2] The paramedic also noted that when the child opened his eyes, "they would veer straight to the left, which is another sign of a head injury, a brain injury."

After paramedics stabilized the child they transported him to Covenant Children's Hospital. The emergency room physician also found the child nonresponsive. A CT scan revealed a large subdural hematoma on the right side of the child's head. Surgery followed to remove the hematoma and lessen pressure inside the child's skull. Photos taken in the hospital show a large C-shaped surgical wound on the right side of the child's head. He spent two months in the hospital, and at the time of trial remained in what his mother described as a "semi-coma." He was not then ambulatory, did not speak, did not react to his surroundings and was fed by tube.

In the days after the injury, in response to questions about its cause, appellant began to modify his version of the events. The next day after the injury, appellant told his wife that, while playing, he had thrown his son "at the sofa" from the entryway of the living room. The same day, after *Miranda* warnings, appellant signed a written statement to police stating he liked to play with his son, and "all of our family says I play too rough with him." Appellant told how on that day he played with his son by spinning around while holding the boy by his wrists until they were dizzy, and later by throwing him up in the air and catching him. On the last throw, appellant threw the boy up "as hard as I could and I threw him over my head and out of my reach." Appellant said he failed to catch the child and his head hit the floor.

The second day after the injury, appellant gave a second written statement to police, in which he said his description of his playful activities in his previous statement was accurate, but that the child really was not hurt when appellant failed to catch him after throwing him up in the air. The statement said the child actually was hurt when

3

appellant "threw him across the room in a superman type throw."  In this second written statement, appellant said he threw his son "in an underhand throw like a fast pitch softball with both hands[,]" intending "to throw him onto the couch but he missed and he landed on his head, the back . . . ."

Both of appellant's police interviews also were audio-recorded, and the jury heard both recordings.  During the second interview, appellant reiterated he threw the child, intending him to reach the couch, and insisted he intended no harm to him. Appellant cried during the interview, asserting he would never intentionally hurt his son.

Appellant did not testify at trial.  He presented testimony from his former in-laws.[3] Both testified they never observed abusive behavior by appellant toward his children, and did not think appellant intentionally hurt his son.

In argument, appellant conceded before the jury that his conduct with his son was either reckless or criminally negligent, but steadfastly denied any intentional or knowing conduct with respect to the injury.

The court's charge gave the jury the choices of finding appellant not guilty, or finding him guilty of causing his son's injuries intentionally or knowingly; guilty of causing the injuries recklessly; or guilty of causing the injuries by criminal negligence. The jury found him guilty of the most serious of the offenses, finding he caused the injuries intentionally or knowingly.

---

[3] By the time of trial, appellant and his wife had divorced.  She testified she divorced appellant after deciding the injury to their son was not "an accident."

4

Analysis

Issues One and Two - Sufficiency of the Evidence

In appellant's first issue, he challenges the legal sufficiency of the evidence to support his conviction. He does not contest the sufficiency of the evidence he caused his son's injury nor the sufficiency of the evidence it constituted serious bodily injury.[4] Appellant's contention focuses instead on the evidence he acted with the mental state required to support a conviction under § 22.04(a) of the Penal Code. Like at trial, he argues the evidence shows at most that he acted recklessly. We disagree, and will overrule the issue.

In reviewing issues of evidentiary sufficiency, an appellate court views the evidence in the light most favorable to the verdict to determine whether, based on that evidence and reasonable inferences therefrom, a rational jury could have found each element of the offense beyond a reasonable doubt. *Brooks v. State*, No. PD-0210-09, 2010 Tex. Crim. App. LEXIS 1240 (Tex.Crim.App. Oct. 6, 2010); *Swearingen v. State,* 101 S.W.3d 89, 95 (Tex.Crim.App. 2003); *Conner v. State,* 67 S.W.3d 192, 197 (Tex.Crim.App. 2001) (citing *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). The standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw

---

[4] "'Serious bodily injury' means bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." Tex. Penal Code Ann. § 1.07(a)(46) (Vernon Supp. 2010).

5

reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. If, given all of the evidence, a rational jury would necessarily entertain a reasonable doubt of the defendant's guilt, due process requires that we reverse and order a judgment of acquittal. *Swearingen,* 101 S.W.3d at 95 (citing *Narvaiz v. State,* 840 S.W.2d 415, 423 (Tex.Crim.App. 1992)), *cert. denied,* 507 U.S. 975,113 S.Ct. 1422, 122 L.Ed.2d 791 (1993). Circumstantial evidence is as probative as direct evidence in establishing guilt, and circumstantial evidence alone can be sufficient to do so. *Hooper v. State,* 214 S.W.3d 9 (Tex.Crim.App. 2007) (citing *Guevara v. State,* 152 S.W.3d 45, 49 (Tex.Crim.App. 2004)). A conclusion of guilt can rest on the combined and cumulative force of all incriminating circumstances. *Conner*, 67 S.W.3d at 197.

Injury to a child is a "result of conduct" offense; the culpable mental state relates not to the nature of or the circumstances surrounding the defendant's charged conduct, but to the result of the conduct. *Patterson v. State*, 46 S.W.3d 294, 301 (Tex.App.--Fort Worth 2001, pet. refused) (citing *Haggins v. State*, 785 S.W.2d 827, 828 (Tex.Crim.App.1990)); *see Williams v. State*, 235 S.W.3d 742, 750 (Tex.Crim.App. 2007) (noting injury to child is "result-oriented offense requiring a mental state that relates not to the specific conduct but to the result of that conduct"). We may affirm the jury's general verdict of guilt if we find the evidence sufficient to sustain a finding beyond a reasonable doubt that appellant acted either intentionally or knowingly with regard to his son's injuries. *See Patterson*, 46 S.W.3d at 300 (where jury authorized to convict on more than one theory, general verdict of guilt may be sustained if evidence supports conviction under at least one theory).

6

Under the Penal Code, a person acts intentionally, or with intent, with respect to a result of his conduct when it is his conscious objective or desire to cause the result. Tex. Penal Code Ann. § 6.03(a) (Vernon 2003). A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result. Tex. Penal Code Ann. § 6.03(b) (Vernon 2003). Thus, proof that a defendant knowingly caused injury to a child requires evidence that he was aware with reasonable certainty that the injury would result from his conduct. *Patterson*, 46 S.W.3d at 302.

A person acts recklessly, or is reckless, with respect to the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint. Tex. Penal Code Ann. § 6.03(c) (Vernon 2003).

A defendant's culpable state of mind is almost invariably proven by circumstantial evidence. *Morales v. State*, 828 S.W.2d 261, 263 (Tex.App.--Amarillo 1992), *aff'd*, 853 S.W.2d 583 (Tex.Crim.App. 1993); *accord*, *Montgomery v. State*, 198 S.W.3d 67, 87 (Tex.App.--Fort Worth 2006 pet. refused). Intent can be inferred from the acts, words and conduct of the accused, and from the extent of the victim's injuries and the relative size and strength of the parties. *Patrick v. State*, 906 S.W.2d 481, 487 (Tex.Crim.App. 1995).

The State argues the jury could infer appellant's guilty conscience caused him to lie to his wife, emergency responders and police about how his son's injury was incurred. The paramedic and others quickly recognized it was unlikely to have been incurred in a fall from the couch, and appellant's second statement to police acknowledges he lied in his first interview because he "thought it sounded better and that it would make more sense that I didn't catch him versus what really happened." The State is correct that a jury may infer from a person's lying that "he had something to hide." *Couchman v. State*, 3 S.W.3d 155, 164 (Tex.App.--Fort Worth 1999, pet. refused). While we do not find the inference especially strong as evidence here that appellant caused the injuries intentionally or knowingly, rather than recklessly or negligently, we agree the jury rationally could have assigned some strength to it.

We find further support for the jury's verdict in the medical testimony. Although the precise nature of the child's brain injury is not well described in the record, the medical testimony is to the effect that the subdural hematoma was the result of blunt force trauma. The formerly active child was unconscious when paramedics arrived at the home, and remained in a semi-conscious condition at the time of trial, no longer responsive to his surroundings. Although the emergency room physician acknowledged the possibility the child's injury was incurred by contact with the floor as described by appellant in his statements, if he were "tossed hard enough," the physician also testified he had not seen a subdural hematoma resulting from "a play accident." He elsewhere

8

noted that the injury "would have taken considerable force" and that it carried a significant risk for death.[5]

The jury was free to believe that the child's head injury occurred in the manner appellant last described to police, that is, that appellant tossed the child underhanded toward the sofa but the child landed on his head short of the sofa. The emergency room physician gave opinion testimony concerning the likelihood of the child's head injury occurring in that manner. The physician testified:

> Q. Person standing right in front of that picture playfully tosses a child towards the direction of the sofa, thinking he's going to make the sofa, if . . . the child doesn't make it, and lands on the floor, that's going to cause a subdural hematoma?
>
> A. That I would . . . not find credible.
>
> Q. Why not?
>
> A. If what you described was that was a toss would have been an arc, and if you throw the child straight up in the air and have him come down on his head, that might have imparted that much injury. But a gentle curve that would have put him sliding across the floor, less likely.
>
> Q. Assuming the child landed on his head?
>
> A. He'd have to land straight on the head and have a good arc.
>
> Q. In other words, almost be in front of that sofa with his legs up; is that correct?
>
> A. That would be . . . possible.

---

[5] The record indicates appellant at the time was twenty-two years old, about six feet tall, and weighed about 200 pounds.

There was evidence that the sofa was some eight feet from the spot from which appellant said he tossed his son, and that the child weighed about twenty-six pounds. From the testimony, the jury thus could have concluded that appellant tossed his son in "a good arc" over that distance such that he landed "straight on the head." We believe a jury reasonably could infer that such an action by appellant was accompanied by an awareness that it was reasonably certain to cause serious head injury.[6] The evidence supports a rational conclusion appellant acted "knowingly."[7]

Appellant's second issue asserts the evidence supporting the jury's finding he intentionally or knowingly caused his son's injury is factually insufficient. In *Brooks v. State*, No. PD-0210-09, 2010 Tex. Crim. App. LEXIS 1240 (Tex.Crim.App. Oct. 6, 2010), the Court of Criminal Appeals abandoned factual sufficiency analysis under *Clewis v. State*, 922 S.W.2d 126 (Tex.Crim.App. 1996), and held that the only standard to be applied when determining the sufficiency of evidence to support an element of a criminal offense that the State is required to prove beyond a reasonable doubt is that

---

[6] Appellant's former wife also agreed that appellant, as a parent and as she saw him around the children, "would know that throwing a child across the room like a fast pitch softball would injure that child."

[7] Appellant's son was born prematurely, and spent four months in the hospital at birth. He underwent four surgeries. He was partially deaf and wore hearing aids. Development of the child's speech was delayed and he was learning to sign. The State argues the jury could have inferred appellant caused his son's injury intentionally or knowingly from testimony appellant was "quick tempered," was immature, was frustrated by his son's partial deafness and difficulty in communication, favored the daughter over the son, left most child-rearing duties to his wife, and was required to have the children home with him that day because the family awoke late and his wife hurriedly took their only vehicle to work. Appellant was not employed at the time and the water to their home was turned off because they could not pay the bill. We do not find it necessary to evaluate the inferences the jury rationally could have drawn from such evidence.

10

established by *Jackson v. Virginia.*[8] The previously-applied factual sufficiency standard considers whether the evidence supporting guilt, though legally sufficient, is so weak that the jury's verdict seems clearly wrong and manifestly unjust, or evidence contrary to the verdict is such that the jury's verdict is against the great weight and preponderance of the evidence. *Grotti v. State,* 273 S.W.3d 273, 283 (Tex.Crim.App. 2008); *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex.Crim.App. 2006). Under that standard, the ultimate question is whether, considering all the evidence in a neutral light, the jury was rationally justified in finding guilt beyond a reasonable doubt. *Grotti*, 273 S.W.3d at 283. Even had we applied such a standard to review of the evidence, we could not sustain appellant's contention. From our review of the entire record, the finding of appellant's knowingly injurious conduct was neither clearly wrong and manifestly unjust nor against the great weight and preponderance of the evidence.

We overrule appellant's issues one and two.

Issue Three - Jury Charge

In his third issue, appellant contends the trial court erred when it denied his request to include in the jury charge a voluntariness instruction pursuant to § 6.01(a) of the Penal Code, which provides, "a person commits an offense only if he voluntarily engages in conduct, including an act, an omission, or possession." *See* Tex. Penal Code Ann. § 6.01(a) (Vernon 2003).

"[A]n accused is entitled to an affirmative instruction on any defensive issue raised by the evidence, whether that evidence is weak or strong, unimpeached or

_____

[8] 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

contradicted, and regardless of what the trial court may . . . think about the credibility of the defense." *Valenzuela v. State*, 943 S.W.2d 130, 131 (Tex.App.--Amarillo 1997, no pet.) (citing *Hamel v. State*, 916 S.W.2d 491, 493 (Tex.Crim.App. 1996)). We review alleged charge error by answering two questions: (1) whether error actually existed in the charge; and (2) whether sufficient harm resulted from the error to result in reversal. *Ngo v. State,* 175 S.W.3d 738, 744 (Tex.Crim.App. 2005); *Hutch v. State*, 922 S.W.2d 166, 170-71 (Tex.Crim.App.1996).

We agree with the State that the evidence does not raise an issue of the voluntariness of appellant's conduct, as the concept of voluntariness has been applied in caselaw. The evidence appellant sees as raising the issue is contained in his statements to police, where he told, among other versions, that his son's injury occurred when he tossed his son up into the air but failed to catch him, allowing his head to hit the floor. Appellant argues the jury could have seen his failure to catch the child as an involuntary act, likening his failure to catch him to the "physical reflex" referred to in caselaw. *See Rogers v. State,* 105 S.W.3d 630, 638 (Tex.Crim.App. 2003) (noting "voluntariness" refers to one's own physical body movements; and "If those physical movements are the nonvolitional result of someone else's act, are set in motion by some independent non-human force, are caused by a physical reflex or convulsion, or are the product of unconsciousness, hypnosis or other nonvolitional impetus, that movement is not voluntary"). We see nothing involuntary in the action appellant described in his statement, that of tossing his son in the air. That he intended to catch him but did not is simply another way of saying he did not intend the result of his conduct. "Conduct [is not] rendered involuntary merely because an accused does not

12

intend the result of his conduct." *Id.*, (quoting *Adanandus v. State*, 866 S.W.2d 210, 230 (Tex.Crim.App. 1993)). Appellant was not entitled to an instruction on voluntariness. His third issue is overruled.

Having overruled each of appellant's three issues, we affirm the judgment of the trial court.

James T. Campbell
Justice

Do not publish.