

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-17-00004-CR
_____

CHARLES CHAVEZ, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 364th District Court
Lubbock County, Texas
Trial Court No. 2016-409,283; Honorable William Eichman II, Presiding

November 2, 2018

## MEMORANDUM OPINION

Before QUINN, C.J., and PIRTLE and PARKER, JJ.

Appellant, Charles Chavez, was convicted following a jury trial of continuous sexual abuse of children and was sentenced to confinement for ninety-nine years.[1]  On appeal, he asserts (1) the trial court erred by not giving a voluntariness instruction in the jury charge *sua sponte* when there was evidence sufficient to warrant one and (2) his trial

---

[1] *See* TEX. PENAL CODE ANN. § 21.02(a)-(c), (h) (West Supp. 2018) (a felony of the first degree).

counsel was ineffective for not objecting to the jury charge based on the absence of a voluntariness instruction. The trial court's judgment is affirmed.

BACKGROUND

In April 2016, an indictment issued alleging that during a period that was thirty days or more in duration, to wit: from on or about May 31, 2014 through September 15, 2014, when Appellant was seventeen years of age or older,[2] he committed two or more acts of sexual abuse against four children younger than fourteen years of age.[3] In December 2016, a three-day jury trial was held wherein Appellant was convicted of the allegations in the indictment and sentenced to ninety-nine years confinement.

Prior to trial, in August 2016, Appellant filed a *Motion for Hearing on Voluntariness of Any Admission or Confession Whether Written or Oral* wherein he sought to suppress the contents of a videotaped statement he made to Detective Olivia Boggs. The trial court held a hearing on Appellant's motion and after additional briefing, held that the videotaped statement was admissible at trial because the entire interview was non-custodial. At trial, Appellant renewed his pretrial objection prior to its admission. The trial court overruled his objection and the videotape was played for the jury during the direct testimony of Detective Boggs.

Detective Boggs testified that after she had interviewed three of the four minor children who were alleged to be victims of Appellant's sexual abuse, she determined that Appellant was a suspect in a continuous sexual abuse case. She contacted him and

---

[2] Appellant was twenty-seven years of age at the time of the alleged offense.

[3] The four complainants were between the ages of six and twelve years of age at the time of the alleged offense.

asked him if he wanted to set a time to speak to her about the allegations being made against him. Appellant indicated that he wanted to come to the station and speak with her that same day. She advised him that he was a suspect in a criminal investigation and she believed the offenses occurred at his residence. He told her that he was already aware of the allegations based on an outcry that had been made against him.

When Appellant arrived at the station, he was accompanied by a relative who was giving him a ride home. He was not placed under arrest before the interview and was free to leave at any time. The interview took place in Detective Boggs's office, where she was accompanied by another detective in the normal course. Appellant was told he was not in custody and could leave at any time. Throughout the interview, he continued to have transportation available to him through his relative. He was relaxed at the beginning of the interview but appeared nervous twenty to thirty minutes later. When he later confessed to the sexual abuse of the minors, he tried not to cry. At the interview's conclusion an hour and one-half later, he was informed that he was not under arrest and was free to leave. He reacted by telling the detectives that he did not want to leave and knew he would be found guilty.[4] At that point, Appellant was escorted to the station's lobby without restraint. Detective Boggs went to her office and typed up her report. The following day, a warrant was issued and Appellant was placed under arrest.

Appellant testified at trial that during the interview, he was reliving the sexual abuse he had suffered as a child. He also testified that he was not used to being around men and the male detective present during the interview made him uncomfortable and afraid.

---

[4] The videotape corroborates Detective Boggs's testimony in all respects.

3

Because of these reasons and accompanying emotions, he testified that he thought the detectives would not believe him if he said he was innocent and, as a result, he confessed to crimes he did not commit. There was no other physical or forensic evidence corroborating the commission of an offense. Therefore, the State's case rested entirely on the testimony of four young complainants and the disputed confession contained in Appellant's statement.

Appellant's videotaped statement was referenced in the State's opening and closing statements, as was the testimony of the minor children who described the sexual abuse experienced while visiting Appellant's residence. By way of contrast, Appellant's counsel emphasized that Appellant was reliving the events of his childhood during the interview and, due to the mental stress he was under, he confessed to something he did not do. At the conclusion of the trial on the merits, Appellant did not request an instruction on the voluntariness of his statement to Detective Boggs, nor did he object to the absence of such an instruction in the jury charge. On appeal, Appellant contends the trial court committed egregious error by failing to *sua sponte* instruct the jury as to the voluntariness of his statement pursuant to articles 38.22 and 38.23 of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. arts. 38.22, 38.23 (West 2018).[5]

---

[5] Hereafter, we will refer to provisions of the Texas Code of Criminal Procedure simply as "article ___, § ___."

4

ISSUE ONE—VOLUNTARINESS INSTRUCTION

STANDARD OF REVIEW

A trial judge has an absolute duty to prepare a jury charge that accurately sets out the law applicable to the case—whether requested by the defendant or not. *Oursbourn v. State*, 259 S.W.3d 159, 179-81 (Tex. Crim. App. 2008). *See* Art. 36.14 (West 2007). When statutes, such as articles 38.22 and 38.23, require an instruction under certain circumstances, that instruction is part of the "law applicable to the case," and the trial court commits error if it fails to include a written instruction in the jury charge as required under the statutes. *Oursbourn*, 259 S.W.3d at 180-81.

Purported error in a jury charge is reviewed using a two-step process. *Kirsch v. State,* 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). First, we determine whether error exists. Secondly, we determine whether the error was sufficiently harmful to require reversal based on the test set forth in *Almanza*.[6] *Id.* The issue of error preservation is not relevant until harm is assessed because the degree of harm required for reversal depends on whether the error was preserved. *Id.* Where, as here, the defendant fails to raise a timely objection to the omission of a voluntariness instruction, reversal is required only if the error was fundamental in the sense that it was so egregious and created such harm that the defendant was deprived of a fair and impartial trial. *Villarreal v. State*, 453 S.W.3d 429, 433 (Tex. Crim. App. 2015); *Oursbourn*, 259 S.W.3d at 165, 174.

---

[6] *See Almanza v. State,* 686 S.W.2d 157, 171-72 (Tex. Crim. App. 1985) (holding that if no proper objection was made at trial, an accused will obtain a reversal only if the error is so egregious and created such harm that he was denied a "fair and impartial trial").

Jury-charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory. *Villarreal*, 453 S.W.3d at 433. Egregious harm is a "high and difficult standard" to meet. *Id.* A determination of egregious harm must be made on a case by case basis and be adequately supported by the record. *Id.* In examining the record to determine whether charge error is egregious, we consider: (1) the entirety of the jury charge itself, (2) the state of the evidence, including contested issues and the weight of probative evidence, (3) the arguments of counsel, and (4) any other relevant information revealed by the trial record as a whole. *Id.*; *Gelinas v. State*, 398 S.W.3d 703, 705-06 (Tex. Crim. App. 2013).

APPLICABLE LAW

Under article 38.21, "[a] statement of an accused may be used in evidence against him if it appears that the same was freely and voluntarily made without compulsion or persuasion . . . ." *See* Art. 38.21 (West 2005). Texas law provides that a trial court shall give a jury instruction regarding the voluntariness of an accused's statement in three situations: (1) a general instruction on voluntariness under article 38.22, section 6, (2) a general warnings instruction under article 38.22, section 7, and (3) a specific voluntariness instruction for constitutional due process under article 38.23(a). *Oursbourn*, 259 S.W.3d at 173-74; Arts. 38.22, 38.23 (West 2018). In essence, an article 38.22, section 6 general instruction asks the jury to determine if the accused's statement was voluntarily made, and then instructs the jury to disregard that statement if it determines that it was not. Similarly, an article 38.22, section 7 general warnings instruction asks the jury to determine if the warning requirements of article 38.22, section 2 or section 3 have been satisfied in a *custodial* interrogation, and then instructs the jury to disregard the

6

statement if those requirements have not been met. Finally, an article 38.23(a) specific instruction is a fact-based instruction that instructs the jury to disregard a statement if it is the product of a "violation of any provisions of the Constitution or laws of the State of Texas, or the Constitution or laws of the United States . . . ."

As noted in *Oursbourn*, confusion exists about which, if any, instruction is appropriate because our case law has often failed to distinguish, and sometimes blurred, the difference between entitlement to a general instruction under the provisions of article 38.22 or a specific instruction under the exclusionary rule provisions of article 38.23. *Oursbourn*, 259 S.W.3d at 174.

ANALYSIS

Appellant asserts on appeal that he was entitled to a general voluntariness instruction under article 38.22, section 6 solely because his statement to Detective Boggs was prompted by fear and by childhood memories of his own sexual abuse.[7] Before the trial court's duty to instruct under article 38.22, section 6 is triggered, however, there are statutory procedures that must be followed. *See Smith v. State*, 532 S.W.3d 839, 843 (Tex. App.—Amarillo 2017, no pet.) (citing *Oursbourn*, 259 S.W.3d at 175). Although Appellant did raise the issue of voluntariness by a motion to suppress, article 38.22, section 6 clearly contemplates that at the time of trial, an article 38.22, section 6 objection be made and a separate hearing be conducted outside the presence of the jury to

_____

[7] Appellant does not assert that the conduct of the detectives was in any way related to the statements he made during the interview or that he was in custody at the time of the interview.

7

determine whether a voluntariness instruction is warranted.[8]  *Id.*  At such a hearing, both parties would have an opportunity to present any new evidence on the issue that was not provided at the suppression hearing.  *Id.*  Because there is no evidence that Appellant alerted the trial court to any "voluntariness" issue at trial under article 38.22, section 6 or otherwise sought a hearing on voluntariness, the procedures outlined by article 38.22, section 6 were not implemented.  As such, Appellant was not entitled to a general voluntariness instruction under article 38.22, section 6.  *See Smith*, 532 S.W.3d at 843-44.

Furthermore, even assuming the trial court erred in failing to give a general voluntariness instruction under article 38.22, section 6, we find that Appellant did not suffer egregious harm as a result thereof.  As previously stated, an appellate court must consider the following factors when determining egregious harm:  (1) the entirety of the jury charge itself, (2) the state of the evidence, including contested issues and the weight of probative evidence, (3) the arguments of counsel, and (4) any other relevant information revealed by the trial record as a whole.  *Villarreal*, 453 S.W.3d at 433.

*Entirety of the Jury Charge*:  The jury charge in this case was a complex charge setting forth an allegation of continuous sexual abuse of children followed by nine separate allegations of the lesser included offenses of aggravated sexual assault of the

---

[8] Article 38.22, section 6 states, in pertinent part, as follows:

In any case where a motion to suppress the statement has been filed and evidence has been submitted to the court on this issue, the court within its discretion may reconsider such evidence in his finding that the statement was voluntarily made and the same evidence submitted to the court at the hearing on the motion to suppress shall be made a part of the record the same as if it were being presented at the time of trial.  However, the state or the defendant shall be entitled to present any new evidence on the issue of the voluntariness of the statement prior to the court's final ruling and order stating its findings.

four alleged victims. While the charge does not contain a general voluntariness instruction, it does contain an instruction reminding the jurors of their duty to determine the "believability of the witnesses" and the "weight to give their testimony." Based on this instruction, the jury should have understood that it was free to disregard the incriminatory statements made by Appellant if it was to believe his contention that those statements were false and the result of traumatizing childhood memories. As such, the jury charge itself was at least neutral on the question of egregious harm.

*State of the Evidence:* In the prosecution of an offense under chapter 21 of the Texas Penal Code, such as in this case, the uncorroborated testimony of the victim or victims alone is sufficient to convict the accused of the charged offense if the victim or victims informed any person, other than the accused, of the offense within one year after the date on which the offense is alleged to have occurred. *See* Art. 38.07(a) (West Supp. 2018). *See also Garcia v. State*, 563 S.W.3d 925, 928 (Tex. Crim. App. 1978); *Quincy v. State*, 304 S.W.3d 489, 497 (Tex. App.—Amarillo 2009, no pet.). Here, the record reflects that the four complainants of Appellant's sexual abuse reported the abuse within one year and further testified at trial to multiple incidents of abuse including Appellant touching their private parts, engaging in oral sex with the complainants, having them engage in oral sex with him, and performing anal intercourse on them, all within the time frame stated in the indictment. There were also several witnesses that established Appellant was able to take advantage of these minor children by using his position at a boys club to gain the trust of their parents and recruit the boys to engage in sexual abuse in the bedroom of his residence until there was an outcry. The evidence of Appellant's guilt was overwhelming even without his confession and we cannot say that the absence of a general

9

voluntariness instruction affected the very basis of the case or vitally affected his defense at trial. Accordingly, this element weighs heavily in favor of a finding of no egregious harm.

*Arguments of Counsel*: Although the State referenced Appellant's confession approximately four times during its closing statements to the jury, the testimony of the complainants was clearly the focal point of the State's opening and closing statements, as well as its case-in-chief. Moreover, in addition to emphasizing Appellant's testimony denying commission of the offense, Appellant's attorney stressed in his closing statement that the abuse Appellant suffered as a child and the thoughts running through his mind during the interview were what prompted him to give a false confession. Because Appellant was allowed to fully explain his claim of a false confession and argue that position before the jury, we find this element does not weigh in favor of a finding of egregious harm.

*Other Relevant Information*: While it is a subtle distinction, it is important to note that Appellant's defense at trial was not that his statement was coerced or involuntary but that it was untrue. He testified that he only confessed to the offenses because, due to sexual abuse he endured as a child, he was afraid, nervous, and paranoid during the interview. That is, his defense was that his confession was false and the offenses did not occur—not that his confession was coerced or involuntary. The jury heard his testimony and viewed the videotaped interview wherein he initially appeared calm, then nervous, and later attempted to hold back tears. Appellant did not otherwise exhibit any extraordinary behavior during the interview. In fact, when the interview ended, he did not want to leave the station but wanted to remain there. Thus, the videotape represented,

10

at the very least, conflicting evidence whether he was under the coercive influence of a traumatizing memory of childhood abuse and fear when he recounted sexually abusing the complainants in this case.

On balance, after reviewing the entire record, including the jury charge itself, the contested issues, trial evidence, and arguments of counsel, we hold that Appellant did not suffer egregious harm when the trial court did not *sua sponte* provide a voluntariness instruction in the jury charge. Appellant's first issue is overruled.

ISSUE TWO—INEFFECTIVE ASSISTANCE OF COUNSEL

STANDARD OF REVIEW

The Sixth Amendment guarantees the right to reasonably effective assistance of counsel in state criminal prosecutions. *McMann v. Richardson*, 397 U.S. 759, 771 n.14, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970). We examine ineffective assistance of counsel claims by the standard enunciated in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), and as adopted by Texas in *Hernandez v. State*, 726 S.W.2d 53, 56-57 (Tex. Crim. App. 1986). This standard applies to both the guilt/innocence and punishment phases of criminal proceedings. *Hernandez v. State*, 988 S.W.2d 770, 772 (Tex. Crim. App. 1999).

Under this standard, Appellant has the burden to show by a preponderance of evidence that (1) trial counsel's performance was deficient, i.e., it fell below the prevailing professional norms and (2) the deficiency prejudiced the defendant, i.e., but for the deficiency, there is a reasonable probability that the result of the proceeding would have been different. *See Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002);

11

*Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). A failure to make a showing under either prong defeats a claim for ineffective assistance. *Lampkin v. State*, 470 S.W.3d 876, 897 (Tex. App.—Texarkana 2015, pet. ref'd) (citing *Rylander v. State*, 101 S.W.3d 107, 110-11 (Tex. Crim. App. 2003)).

To overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance and a presumption that the challenged action might be considered valid trial strategy; *Strickland*, 466 U.S. at 689, "any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Thompson*, 9 S.W.3d at 814. Further, judicial review must be highly deferential to trial counsel and avoid the deleterious effects of hindsight. *Ingham v. State*, 679 S.W.2d 503, 509 (Tex. Crim. App. 1984).

In the usual case in which an ineffective assistance claim is made, "the record on direct appeal will not be sufficient to show that counsel's representation was so deficient and so lacking in tactical or strategic decision-making as to overcome the presumption that counsel's conduct was reasonable and professional." *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). This is generally the case because a silent record provides no explanation for counsel's actions and, therefore, will not overcome the strong presumption of reasonable assistance. *Freeman v. State*, 125 S.W.3d 505, 506 (Tex. Crim. App. 2003).

ANALYSIS

Regarding Appellant's contention that his counsel was ineffective because he failed to object to the trial court's jury charge, this issue demonstrates "the inadequacies

inherent in evaluating ineffective assistance claims on direct appeal." *Patterson v. State*, 46 S.W.3d 294, 306 (Tex. App.—Fort Worth 2001, pet. ref'd). Appellant did not file a motion for a new trial claiming ineffective assistance regarding this issue, and like *Patterson,* there was no evidentiary hearing on the issue of whether Appellant's complaint of ineffective assistance involved an action that may or may not have been grounded in sound trial strategy. As such, the record does not reflect counsel's reasons for doing or failing to do the thing of which Appellant complains. Furthermore, to the extent this purported omission was part of counsel's trial strategy, based on this record, we cannot say that counsel's conduct was "so outrageous that no competent attorney" would have chosen to seek a voluntariness instruction, particularly when Appellant's motion to suppress the statement was denied by the trial court after watching his videotaped statement. *See Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). *See also Mooney v. State*, 817 S.W.2d 693, 698 (Tex. Crim. App. 1991) (holding it is a valid strategy not to object if objection would have been futile). Accordingly, Appellant's second issue is overruled.

CONCLUSION

The trial court's judgment is affirmed.


Patrick A. Pirtle
Justice


Do not publish.